**Nelson HERNANDEZ,**
**Plaintiff-Appellant,**

v.

**C. LATTIMORE, Nathaniel Mitchell, Hugh Herbert, N. Avignone, and R. Brown, Correctional Officers, Metropolitan Correctional Center, Defendants-Appellees.**

**No. 351, Docket 78–2098.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1978.

Decided Dec. 6, 1979.

---

John Boston, New York City (William E. Hellerstein and Robert B. Shapiro, The Legal Aid Society, Prisoners' Rights Project, New York City), for plaintiff-appellant.

Kent T. Stauffer, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., and Patrick H. Barth, Asst. U. S. Atty., New York City, of counsel), for defendants-appellees.

Before WATERMAN and TIMBERS, Circuit Judges, and NICKERSON, District Judge.*

WATERMAN, Circuit Judge:

Plaintiff appeals from a judgment entered in the United States District Court for the Southern District of New York, (Brieant, District Judge), dismissing his complaint for failure to state a claim upon which relief could be granted and for lack of subject matter jurisdiction. In his complaint plaintiff sought to recover damages for alleged injuries caused by excessive and unnecessary force applied to him by the defendants, federal correctional officers, while he was an incarcerated prisoner. He relied upon the authority of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), his claim being that he suffered cruel and unusual punishment despite the protection guaranteed him by the Eighth Amendment. To this constitutional claim plaintiff appended a state law assault and battery claim. The court below decided that the constitutional remedy provided for in *Bivens* against the individual officers had been preempted by the amendment to the Federal Tort Claims Act (FTCA) adopted subsequent to the events in *Bivens*, by which, 28 U.S.C. § 2680(h), on March 16, 1974, the government had waived its sovereign immunity for assaults and batteries. Accordingly, the court below granted summary judgment in favor of defendants, thereby dismissing plaintiff's *Bivens* action in light of its finding that there was now a full and adequate remedy against the government itself available to the plaintiff under the FTCA. Having thus disposed of plaintiff's constitutional claim, the court below also dismissed plaintiff's pendent state law claim on the ground of a lack of subject matter jurisdiction. We reverse the judgment dismissing plaintiff's complaint and remand the cause for further proceedings below inasmuch as we expressly find that the existence of the FTCA provision does not preempt a *Bivens* action.

This litigation is based on events that took place on the evening of October 4, 1976, at the Metropolitan Correctional Center (M.C.C.) in New York City, where Hernandez was incarcerated. According to information elicited in the district court proceedings, on that evening Hernandez overturned a salad tray in the M.C.C. cafeteria during the evening meal. Although the

* Hon. Eugene H. Nickerson of the U. S. District Court for the Eastern District of New York, sitting by designation.

complaint does not recite the events leading up to the initial altercation, statements made at argument on the defendants' motion to dismiss indicated that by overturning the salad tray Hernandez was protesting a correctional officer's failure, or refusal, to supply him with silverware to replace the plastic utensils that were available.[1] Shortly after dinner was served Hernandez returned to his cell. He alleges that soon after his return defendants Lattimore, Mitchell, Herbert, Avignone and Brown visited his cell, allegedly conducted a "strip-search," and later escorted him fully clothed into an elevator which deposited him at a third-floor holding area.[2]

The complaint focuses on alleged attacks upon him which Hernandez claims occurred while en route to the holding area. Hernandez charges that, while surrounded by defendants Mitchell, Herbert, Avignone, and Brown, he was punched about the face and body by defendant Lattimore, and kicked by an unidentified defendant. Hernandez insists that these attacks occurred without provocation or because of any disobedience to orders. The complaint further alleges that while bleeding profusely he was deposited in the holding area where he received no medical attention.[3]

As a result of the actions of the correctional officers, Hernandez asserts that he sustained injuries to his face, mouth, and body, as well as his psyche. Hernandez charges that the conduct of the defendant officers amounted to a violation of his Eighth Amendment right to be free from cruel and unusual punishment and constituted assault and battery under state law as well. He seeks $60,000 in compensatory damages jointly and severally from the defendants and an additional $120,000 in punitive damages.

The defendants pleaded a general denial to all the allegations of the complaint and also asserted as affirmative defenses that their conduct was lawful; that the court lacked subject matter jurisdiction; and that plaintiff failed to state a claim upon which relief could be granted. Additionally, de-

---

1. The pertinent allegations of the complaint read as follows:

    FIRST CLAIM FOR RELIEF

    7. Shortly after dinner was served at floor 9 North at M.C.C. on October 4, 1976, plaintiff returned to his cell on the same floor.

    8. Several minutes later, Defendants LATTIMORE, MITCHELL, HERBERT, AVIGNONE and BROWN arrived at plaintiffs' [sic] cell and ordered him to accompany them.

    9. Plaintiff accompanied these five defendants to the elevator at 9 North and they all went into the elevator.

    10. While in the elevator, plaintiff was punched about the face and body by defendant LATTIMORE while plaintiff was surrounded by defendants MITCHELL, HERBERT, AVIGNONE and BROWN. One of the defendants kicked the plaintiff while he was on the elevator.

    11. During the incident described in paragraphs 8–10, plaintiff disobeyed no orders by any prison official, nor did he strike or attempt to strike anyone.

    12. Solely as a result of the brutal, malicious, and unlawful beating inflicted by defendants, plaintiff received severe injuries to his face, mouth, and body.

    13. After the beating, plaintiff was taken to a holding area on the third floor of the M.C.C.

    (Appendix at 5a, 6a).

2. The defendants' answer indicates that Hernandez was ordered to return to his cell by officers of the M.C.C. following his outburst in the cafeteria. Additionally, the amended answer of defendant Lattimore states that he, along with other correctional officers, was ordered to remove Hernandez from the ninth floor to the third floor of the M.C.C.

    The holding areas, such as the one in which Hernandez was deposited, are commonly used for newly arrived prisoners awaiting cell assignment, for prisoners who present disciplinary problems, and for prisoners awaiting psychiatric testing.

3. The complaint charged that "[s]ometime later on the same night, defendant EDWARDS came into the area where plaintiff was being held. He did nothing to aid or treat plaintiff, who was bleeding profusely, for his injuries." Plaintiff's complaint, ¶ 14. Hernandez contended that Edwards's failure to offer him emergency medical assistance prolonged his mental pain and physical suffering, and constituted a deliberate indifference to serious medical needs of a prisoner in violation of the Eighth Amendment's prohibition against cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

    The complaint with respect to defendant Edwards was, however, dismissed on the consent of the parties by Stipulation and Order filed on December 27, 1977.

fendant Lattimore affirmatively pleaded self-defense, and he counterclaimed for $5,000 compensatory damages and $10,000 in punitive damages for assault and battery by plaintiff upon him.[4]

After so pleading, defendants moved to dismiss the federal claim for failure to state a claim upon which relief could be granted, and moved for dismissal of the pendent state claim for lack of federal court subject matter jurisdiction. Inasmuch as there was a consideration of matters outside the pleadings, the motion for dismissal was treated by the district court as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[5]

The district court, although recognizing that a private damage remedy may be implied directly from the Constitution under *Bivens, supra*, and its progeny, concluded that the availability of a "full and ade-quate" remedy under the FTCA precluded a *Bivens* remedy. Acknowledging that the FTCA did not set forth a full alternative to a *Bivens* remedy, the court found that the alleged inadequacies of the statutory reme-dy[6] did not deprive Hernandez of an effica-cious vehicle for the vindication of his fed-erally secured rights under the Eighth Amendment. As stated by the district court, "[t]he Federal Tort Claims Act, . . provides the very remedy that Mr. Hernan-dez seeks, and which was not then available to Webster Bivens—money damages." In reliance, therefore, on the existence of an alternative specific statutory remedy,[7] the district court determined that, pursuant to the FTCA, Hernandez' federal rights could be fully redressed, and so refused to imply a constitutional remedy under *Bivens*.

Our review of the district court's judg-ment dismissing plaintiff's complaint natu-

**4.** Defendant Lattimore alleges that Hernandez assaulted and struck him first, whereupon Lat-timore used only such force as was necessary to defend himself and restrain appellant. Amended Answer, Defendant Lattimore, ¶ 12–13.

**5.** Although we reverse the district court's judg-ment dismissing plaintiff's complaint, we do not do so because of any failure of the district court to apply correctly the guidelines articu-lated in *Heyman v. Commerce & Industry In-surance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975), in ruling on the defendant's motion for summary judgment. The court below did not "try issues of fact," nor did it fail to "resolve all ambiguities and draw all reasonable inferenc-es" in plaintiff's favor. The court below merely found that, assuming plaintiff's claims to be meritorious, an FTCA action, and not a *Bivens* action, was the only available vehicle for the presentation of those claims in a federal forum.

**6.** Counsel for appellant argued that the FTCA was an inadequate alternative inasmuch as pu-nitive damages were not recoverable, 28 U.S.C. § 2402. The district court expressed doubt as to whether punitive damages would be recover-able in a *Bivens* type action, and concluded "there seems to be no reason to assume that they are not, since assault and battery (the torts which parallel the constitutional interest asserted by Hernandez) are typical of the inten-tional torts for which punitive damages may be awarded . . . ." Memorandum and Order, at 6. We find it unnecessary to comment upon this lower court dictum. Even the issue of whether compensatory damages should be awarded this plaintiff was never reached be-low; nor has it been here.

**7.** 28 U.S.C. § 1346 gives the district court origi-nal jurisdiction and concurrent jurisdiction with the Court of Claims over claims against the United States. Subsection (b) of § 1346, along with 28 U.S.C. § 2671 et seq., were de-signed primarily to remove the sovereign im-munity of the United States from suits in tort, and, with certain exceptions, to render the government liable in tort as a private individual would be under like circumstances. The excep-tions preserving sovereign immunity are set out in 28 U.S.C. § 2680. Subsection (h) of § 2680 preserves immunity with respect to claims aris-ing out of false imprisonment, false arrest, etc. Public Law 93–253, § 2, however, amended § 2680(h) by adding the following proviso:

> *Provided*, That, with regard to acts or omis-sions of investigative or law enforcement of-ficers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false impris-onment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law en-forcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence or to make arrests for violations of Federal law.

The defendants fall within the definition of "in-vestigative or law enforcement officers" by vir-tue of 18 U.S.C. § 3050, which empowers offi-cers or employees of the Bureau of Prisons of the Department of Justice to make arrests.

rally begins with the Supreme Court's seminal decision in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), wherein the Court held that a cause of action for damages against federal law enforcement officers who violate the Fourth Amendment could be inferred directly from provisions of the U.S. Constitution.

On the morning of November 26, 1965, Webster Bivens' apartment was entered by agents of the Federal Bureau of Narcotics, who, acting under the cloak of federal authority, and without probable cause or warrant, caused Bivens to be arrested for alleged narcotics violations. The complaint filed against Bivens was, however, subsequently dismissed by the United States Commissioner. Bivens brought an action against the individual officers, seeking $15,000 jointly and severally in compensatory damages. The complaint alleged that the arrest and events preceding his arrest had caused Bivens great humiliation, embarrassment, and mental suffering. The district court dismissed the complaint for lack of federal jurisdiction. *Bivens v. Six Unknown Named Agents*, 276 F.Supp. 12 (E.D. N.Y.1967). We affirmed the district court and, despite recognition that an action for trespassory damages should be maintainable in federal courts,[8] determined that, in view of the availability of injunctive relief, the exclusionary rule, and state law tort actions for the vindication of Bivens' rights, another judicially created damage remedy was not indispensable to the effectuation of the Fourth Amendment protections. *Bivens v. Six Unknown Named Agents*, 409 F.2d 718 (2d Cir. 1969). On certiorari, the Supreme Court reversed and held, *inter alia*:

> The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts. . . .
> Having concluded that petitioner's complaint states a cause of action under the Fourth Amendment, we hold that petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment.

*Bivens, supra*, 403 U.S. at 397, 91 S.Ct. at 2005 (citations omitted).

The holding in *Bivens* represented the first judicial recognition of a cause of action implied directly under a constitutional provision. Up until the *Bivens* decision litigants armed only with the general jurisdictional statute, 28 U.S.C. § 1331, were relatively unsuccessful in utilizing the positive law of the Constitution as a vehicle to force affirmative action. *See, e. g., Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *cf. Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933) (Fifth Amendment: just compensation).

The keystone of the *Bivens* decision was the Court's recognition that the commands of the Fourth Amendment created an affirmative federal right to be free from unreasonable searches and seizures, a right which could be redressed in money damages even in the absence of explicit congressional action authorizing the remedy. In fashioning a remedy for *Bivens* directly under the Fourth Amendment with 28 U.S.C. § 1331 as a jurisdictional base, the Court reasoned that although the Fourth Amendment does not "in so many words provide for its enforcement by an award of money damages for the consequence of its violation," federal courts possess the power to use tradition-

---

**8.** As was said when the *Bivens* case was first before us:

> It is my thought that by virtue of 28 U.S.C. § 1331 the federal courts can also entertain this cause of action irrespective of whether a statute exists specifically authorizing a federal suit against federal officers for damages allegedly occasioned by their unnecessarily severe acts. . . .

> . . . It seems evident to me, therefore, that, logically, if we should wish to ensure to an individual the fullest protection of his constitutional rights, an action against federal officers for trespassory damages should be maintainable in the federal courts.

409 F.2d 718, 726 (2d Cir. 1969) (Waterman, J., concurring).

ally available judicial remedies when necessary for redress. *Bivens, supra*, 403 U.S. at 396, 91 S.Ct. at 2004, citing *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). *See also J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

Urging restraint in the exercise of this inherent remedial power, the government in *Bivens* argued that a federal damage remedy was unnecessary to enforce the affirmative commands of the Fourth Amendment. Relying primarily on the availability of state actions in tort, the government reasoned that, where Congress has not expressly authorized a particular remedy, federal courts should imply judicial relief only where the remedy is indispensable or essential for the vindication of the interest protected. The Supreme Court, however, rejected this argument, maintaining that state law remedies might be inadequate inasmuch as "[t]he interests protected by state laws regulating trespass and invasion of privacy, and those protected by the Fourth Amendment's guarantee against unreasonable searches and seizures, may be inconsistent or even hostile." *Bivens, supra*, 403 U.S. at 394, 91 S.Ct. at 2003.

In the case *sub judice*, the government argues in support of the judgment of the court below that the converse of the position taken in *Bivens* is applicable because "where Congress *has* acted to establish a remedial scheme [FTCA], the more general remedies usually available to the courts are foreclosed." The government reasons that in view of the availability of a remedy under the FTCA, the case before us does not arise in the remedial void which caused the Supreme Court to imply a remedy in *Bivens* and the absence of this void, therefore, justifies the district court's refusal to imply a constitutional remedy in the proceedings below.

The persuasiveness of the government's argument is greatly diminished, however, by a reading of the legislative history of 28 U.S.C. § 2680(h), the amendment to the FTCA involved here. Certainly, of course, the present case does not arise in the remedial void that handicapped Webster Bivens in pursuing a federal claim against the government, for the remedial void was indeed closed by congressional action in 1974 with the amendment to the FTCA. Nevertheless, it seems clear that Congress in closing that void did not intend to shut out damage actions against government officers who violate constitutionally secured rights. It is clear that the amendment was specifically designed to prevent abuses of the federal no-knock statute such as those which occurred in Collinsville, Illinois.[9] The

**9.** The Collinsville raids involved abuses of the federal no-knock statute (21 U.S.C. § 879) by federal law enforcement officers which amounted to prima facie violations of the Fourth Amendment. The most notorious of the raids occurred in April 1973. In two separate incidents the same federal agents conducted no-knock raids on two different homes. "The agents entered the two houses without warrants in violation of the Federal 'no-knock' statute, kicked in the doors without warning, shouting obscenities, and threatening the occupants with drawn weapons. The terrified inhabitants were only temporarily relieved when the agents left after discovering that they had entered the wrong houses." At the time the raids were conducted the innocent victims were without a legal remedy against the federal government for physical damage, much less for the pain, suffering, and humiliation to which the families were subjected, due to the bar of sovereign immunity. Inasmuch as no evidence was seized and the individuals were never arrested, nor ever suspected of wrongdoing, the traditional remedy for Fourth Amendment violations—the exclusionary rule—was a totally inadequate remedy.

The committee, while recognizing the private right of action against the individual officers created by *Bivens, supra,* determined that the private cause of action was a "hollow remedy" because "Federal agents are usually judgment proof." The codification of the doctrine of sovereign immunity as evidenced by the Federal Tort Claims Act (28 U.S.C. §§ 2671–2680) was viewed by the committee as manifestly unjust. The amendment deprives the federal government of the defense of sovereign immunity in any case where federal law enforcement agents, acting within the scope of their employment, or under color of federal law, commit any of the following torts: assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of process. *See* S.Rep.No. 93–588, 93d Cong., 2d Sess., *reprinted* in [1974] U.S.Code Cong. & Admin.News at pp. 2790–91.

Senate Committee which reported out the amendment viewed the abolition of sovereign immunity as creating in favor of "innocent individuals who are subjected to raids of the type conducted in Collinsville" a cause of action against the government itself, a cause of action which would exist side by side with a *Bivens* action against the individual officers.

> [T]his provision should be viewed as a counterpart to the *Bivens* case and its progenty [sic], in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens* (and for which that case imposes liability upon the individual Government officials involved).

S.Rep.No. 93–588, 93d Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News at pp. 2789, 2791.

■ Therefore, even a cursory reading of the Senate Committee Report demonstrates a congressional intent to provide a remedy against the federal government in addition to, but not wholly in the place of, the private cause of action created by *Bivens. See Norton v. United States*, 581 F.2d 390, 395 (4th Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978). Furthermore, it is important to note that whenever Congress intended to make the FTCA remedy the exclusive remedy it has done so explicitly. For example, Congress exempted federal employees acting in the course of their employment from damage suits arising out of the negligent operation of motor vehicles. 28 U.S.C. § 2679 (1970). *See also* 38 U.S.C. § 4116 (medical malpractice).

■ However, we wish to make clear that although we find there to be the two remedies and reverse the district court's finding that the FTCA remedy has preempted the *Bivens* remedy, the two remedies do not stand *in pari materia*. The FTCA provision, providing a vehicle for the redress of certain common law torts, has a broader remedial scope than that accompanying a *Bivens* action. This is so because *Bivens* requires that there have been a constitu-

tional violation giving rise to federal question jurisdiction under 28 U.S.C. § 1331; and we recognize, as have other courts, that some common law torts and some statutory torts, although actionable in state forums, do not rise to the level of constitutional violations. *Atkins v. Lanning*, 556 F.2d 485, 489 (10th Cir. 1977); *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977); *Smith v. Spina*, 477 F.2d 1140, 1143 (3d Cir. 1973); *Wells v. Ward*, 470 F.2d 1185, 1187 (10th Cir. 1972); *Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972). The converse is equally true insofar as some conduct is actionable under the Constitution that involves no force or violence and for which there exists no counterpart in the common law. *See, e. g., Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (expatriation). Just as malpractice does not become a constitutional violation merely because the victim is a prisoner, *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), so, too, not every assault and battery gives rise to a cause of action under the Eighth Amendment because the victim happens to be a prisoner. As Judge Friendly observed in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973):

> Certainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person or anything attached to it and practically identified with it . . . still less is it as extensive as that afforded by the common law action for assault, redressing "Any act of such a nature as to excite an apprehension of battery" . . . . .

481 F.2d at 1033. *Accord, Arroyo v. Schaefer*, 548 F.2d 47, 50 (2d Cir. 1977).

In conclusion, it should be noted that the preemptive analysis employed by the district court and the attendant judgment dismissing plaintiff's complaint precluded any consideration of the merits of plaintiff's federal and state law claims in the proceed-

ings below.[10] We emphasize that our reversal of the district court's judgment is predicated solely upon the court's finding that the amendment to the FTCA has preempted plaintiff's *Bivens* action. Accordingly, in view of the procedural posture of this case, we deem it inappropriate at this time to express any opinion as to the merits of plaintiff's underlying claims. Indeed, we believe that a remand of the cause to the court below is called for here to afford the trier of fact the first opportunity to pass upon the merits of plaintiff's claims.

Therefore, the proceedings in the district court on remand should be directed toward an evaluation of the alleged conduct of the defendants, and a determination whether, assuming the alleged conduct in fact occurred, such conduct constituted a violation of Hernandez' Eighth Amendment right to be free from cruel and unusual punishment or whether such conduct amounted merely to an invasion of his state-created rights which commonly is redressed by actions in tort.

Finally, we note that in the proceedings below the district judge had expressed a willingness to allow plaintiff to amend his complaint to include a Fifth Amendment claim. Although the plaintiff's complaint was not so amended, plaintiff did assert a due process claim in a pre-trial memorandum, as well as in answers to interrogatories. In view of recent developments in this area of the law, *see, e. g., Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the district judge's prior expression of willingness to permit such an amendment, plaintiff should be entitled to amend his complaint in the proceedings on remand to include a Fifth Amendment claim if he so desires.

Judgment reversed and cause remanded to the district court for further proceedings.