**Robert T. DALE, Plaintiff,**

v.

**John BARTELS, et al., Defendants.**

**No. 74 Civ. 1382–CLB.**

United States District Court,
S. D. New York.

Feb. 26, 1982.

H. Miles Jaffe, Norwick, Raggio, Jaffe & Kayser, New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty., New York City, for defendants; William Hibsher, Asst. U. S. Atty., New York City, and Sarah Mayer, of counsel.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this ancient *Bivens* type civil rights action, filed March 19, 1974, there has been pending since December 22, 1981 a motion by all those defendants actually served and appearing, to dismiss the complaint for fail-

ure to state a claim, or alternatively, for summary judgment. Joined with *Bivens* allegations of Constitutional violations by agents of the Bureau of Narcotics and Dangerous Drugs ("BNDD", now Drug Enforcement Agency) are pendent claims under state law for false arrest and defamation.

The sole remaining plaintiff, Robert T. Dale, (hereinafter "Dr. Dale") was a physician. In 1971–72 together with his wife he operated a methadone clinic in New York City. Following an audit of the clinic records by agents of the BNDD, plaintiff closed his clinic and departed for Europe.

On February 14, 1973, a Grand Jury in this district returned an indictment against Dr. Dale and another, under docket number 73 Cr. 163, charging Dr. Dale with three counts of violation of 21 U.S.C. §§ 812, 827 and 843 by furnishing false and fraudulent information in records of a controlled substance dispensed, and two counts for making false statements to federal agents in violation of 18 U.S.C. § 1001. For reasons which need not concern us, this indictment never proceeded to trial on the merits. Leave was granted to the Government by Judge Stewart of this Court on March 4, 1974 to file an order *nolle prosequi*, and that was done.

While the complaint contains several claims and theories pleaded, our consideration at this time is directed only to the following allegation:

"23. By making false and malicious statements to a grand jury, and acting in bad faith, certain unknown defendants caused an indictment to issue against defendants [sic, should read "plaintiffs"] on or about February 16, 1973 charging them with serious and infamous crimes which defendants knew or should have known there was no cause to believe plaintiffs have committed, thus depriving plaintiffs of their right to 'due process of law' guaranteed by the Fifth Amendment."

We are told without contradiction that defendant James Steinberg is the only defendant actually served and appearing in this case, who did testify before the grand jury which voted the 1973 indictment. Plaintiff does not know, nor does the Court know what his testimony was. When asked to particularize, in answer to an interrogatory, what there was false and malicious about the grand jury testimony, plaintiff could not do so. His position is that from the totality of other known facts which tend to show defendants were outraged by plaintiff's pre-indictment conduct to the extent of animus, and also from the mere fact that the indictment was returned, "false and malicious statements" must have been made, because otherwise "the grand jury would not have returned an indictment deliberately containing these counts unless the agents had presented a misleading account of the facts" [quoted from Answer to Question 1(iv) to Interrogatories propounded by defendants].

At the time of defendants' motion, plaintiff had pending for decision before the Magistrate designated by then District Judge Pierce to whom this litigation was formerly assigned, a motion to discover the grand jury testimony. That discovery motion remained undecided.

Defendants are being represented here by the Civil Division of the United States Attorney's Office in this district, however, the Assistant United States Attorney in charge of this matter has never to this day seen nor read the grand jury testimony of defendant Steinberg, which is now in the possession of his Office.

Faced with this situation, this Court on its own motion issued a Memorandum and Order dated February 2, 1982 in lieu of a subpoena *duces tecum*, directing as follows:

"The Court directs that the United States Attorney for this District shall produce to this Court and to the attorneys for the parties to this action copies of the grand jury testimony of all persons actually served and appearing and defending in this action, *OR* shall show just cause before me on February 11, 1982 at 3:00 P.M. in Courtroom 705, why he should not be required so to do

The Court realizes that the production of these minutes might present problems of which the Court is presently unaware. Counsel should confer informally in advance of the hearing to delineate any such problems which may exist, and if such there be, to attempt by means of a protective order, partial redaction [*Baker v. United States Steel Corp.*, 492 F.2d 1074, 1075–76 (2d Cir. 1974)], or any other reasonable means, to obviate any such problem by agreement, in order that any problems may be avoided or minimized."

■ On the return date provided in the aforesaid Order, the United States sought and was granted leave to intervene. It opposes disclosure of the grand jury testimony, apparently solely as a matter of principle, or upon the claim that there is no "particularized need" within Rule 6(e)(3), F.R.Crim.P. By its memorandum, and at the hearing before me, the United States specifically eschewed any contention that the release to Dr. Dale of these grand jury minutes at this time, after some nine years have passed, would compromise any ongoing investigation, or invite escape of those whose indictment may be contemplated. There is also no attempt by the Government to show that release at this time would cause targets of grand jury inquiry to suborn perjury or importune the grand jurors. There has been no response to the suggestion or invitation by this Court that the minutes be redacted if need be, to protect any other persons, or any grand juror who may have commented on the record.

■ As we noted in our Memorandum and Order of February 2, 1982, had this plaintiff gone to trial upon the indictment, he probably would have received the grand jury minutes either as possible "Brady" material or pursuant to 18 U.S.C. § 3500(e)(3). The grand jury witness Steinberg was and is a federal agent accustomed to testifying to the results of his investigations of violations of the federal narcotics laws. When he testified to the grand jury it was within his contemplation that he would testify at trial (if trial were held) and that at trial, following his direct testimony the grand jury minutes would have had to be produced pursuant to 18 U.S.C. § 3500(e)(3). Accordingly, he had no justifiable expectation of confidentiality as to his grand jury testimony.

■ Reasons supporting secrecy where a private citizen testifies to the grand jury and thereafter there is no indictment, or the civilian witness does not testify at trial of a resulting indictment, do not in logic apply to a Government agent. A Government agent is not likely to be inhibited by subsequent disclosure in the sense that a businessman, victim of extortion or racketeering who testifies to the grand jury might be. Balancing the interests favoring disclosure with those favoring continued secrecy as required by *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979), I find that there are no factors favoring continued secrecy at this time in this case, apart from general policy, and the Government's memorandum so recognizes.

■ As this Court noted before, the public interest and the judicial interest in the just resolution of this lawsuit would seem to present a "particularized need" which would require their production. See Rule 6(e)(3)(C)(i), F.R.Crim.P.; *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973); *cf. United States v. Sobotka*, 623 F.2d 764 (2d Cir. 1980); *In re Cueto*, 554 F.2d 14 (2d Cir. 1977). This is not a case where the ultimate *facts* testified to before the grand jury, although relevant to a lawsuit, can also be obtained by a litigant from the same original sources, *i.e.*, witnesses having knowledge. That is the sort of situation present in most reported civil cases where disclosure of grand jury minutes has been denied. In such cases, essentially the grand jury testimony is being sought merely as a shortcut to get evidence otherwise obtainable from primary sources by pre-trial discovery or trial subpoena. In such cases, there is usually no "particularized need" within the Rule, because the information sought may be obtained by other means which do not intrude upon the secrecy of the grand jury.

In this case, as in *Biaggi, supra,* the grand jury testimony is the *res* itself, the subject matter of this part of the lawsuit. What is relevant here is not the underlying facts testified to, but the content of the testimony itself. The grand jury testimony itself is what this case (in this aspect) is all about. It would be highly unreasonable to assume that a deposition of Agent Steinberg taken at this remote time would elicit the entire substance of what Mr. Steinberg told the grand jury in 1972 or 1973, and if he did possess such total recall, plaintiff would be unable to test the veracity of the deposition testimony.

The Government's opposition to disclosure seems to be based on its view as to how this Court should manage its business and resolve a pending motion for summary judgment addressed to its informed discretion. The Government argues (Memorandum filed February 10, 1982, p. 3):

"In light of defendants' pending motion to dismiss the grand jury claim—no court has ever accorded a *Bivens* remedy for such a claim [footnote omitted]—it is the Government's view that production of the [grand jury] minutes is unnecessary to that wholly legal question, that the validity of the claim should be decided before the disclosure issue is faced...." (Dashes in original; matter in brackets added).

While it is not surprising that the Government, appearing here as intervenor by the same Assistant United States Attorney who is defending this case, and who made the substantive motion for summary judgment and/or to dismiss the complaint, would like to have the motion decided, and presumably granted, right away; to do so under the circumstances of this case seems unfair and inappropriate. In effect, the Government wishes to have this *nisi prius* court reach, and consider on the merits, a legal issue tendered by the pleadings here, without first finding out if the issue in reality exists. Worse yet, the legal issue to be decided right away is one of Constitutional dimensions, which defendants here and the Government concede is also an issue which "the Second Circuit has not addressed." (Government Memorandum filed February 10, 1982, p. 15).

The district courts in this circuit have been admonished often that in deciding motions for summary judgment we must "draw all reasonable inferences against the moving party" and that summary judgment is inappropriate "when motive is in issue." *See, e.g., E. E. O. C. v. Home Ins. Co.,* —— F.2d —— at —— Dkt. No. 81–6055, 2d Cir. January 26, 1982, slip op. at 980 and cases cited.

In effect, on its motion, the defendants and the Government would like this Court to rule as a matter of Constitutional law, that *no matter what* Mr. Steinberg told the grand jurors of and concerning Dr. Dale, and *no matter how corrupted by malice* his motive in doing so, he has absolute immunity.

Any student of the history of the common law and of the grand jury, set forth so eloquently in part by Judge Kaufman in *In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24 (2d Cir. 1981) might well reach out so to do. Courts, however, are well advised not to reach legal issues of first impression and Constitutional magnitude unless it is necessary to do so. And should we reach the issue and dismiss, we fly in the face of outrageously *obiter dicta* of a majority of the learned judges, sitting *en banc* of the old Fifth Circuit in *Rodriguez v. Ritchey,* 556 F.2d 1185, 1195, 1200 (5th Cir. 1977) to the effect that an effort by a federal officer "maliciously or in bad faith" to seek to obtain an indictment from a grand jury would be actionable under *Bivens,* notwithstanding that the grand jury voted the indictment.[1]

---

1. The defendants and the Government would have us think that the *Rodriguez en banc dictum* was repudiated in the former Fifth Circuit by a three-judge panel opinion of that court in *Charles v. Wade,* 665 F.2d 661, a § 1983 case decided January 11, 1982. That decision, which omits to cite *Rodriguez,* had to do with *trial* testimony, received subject to cross-examination in open court. The majority opinion in *Charles,* while omitting to cite *Rodriguez,* relied

If examination of the grand jury testimony by counsel for the parties and the Court shows that it is innocuous and truthful, and free from malice, something entirely likely but not certain, this Court may grant this aspect of defendants' summary judgment motion *on the facts* without the necessity of reaching the difficult Constitutional question of first impression in this Circuit. Therein lies the particularized need for the grand jury testimony, within Rule 6(e)(3), F.R.Crim.P.; the need is for this Court to avoid deciding such a significant legal issue which may well turn out to be moot, academic and theoretical in this particular case.

The progeny of the mischievous *Bivens* case threaten to engulf us. This is due at least in part to reckless reaching by lower courts of great Constitutional issues, on defense motions directed to the face of artfully drawn pleadings or on motions for summary judgment. *Hernandez v. Lattimore*, 612 F.2d 61 (2d Cir. 1979) was just such a case. Plaintiff there, claiming he had been assaulted by federal correctional officers refused to pursue his remedy under the Federal Tort Claims Act against the fully solvent U. S. Treasury, electing instead to plead a *Bivens* type claim against the impecunious officials in their personal capacity. On an appeal from a decision granting just such a motion as defendants present here, *Bivens* was enlarged to include an implied action for Fifth Amendment claims for which an adequate remedy existed under the Federal Tort Claims Act. Later, on remand, it appeared that the facts underlying the action did not exist except in the mind of the pleader, and a trial jury on remand found no cause. Had this Court deferred the motion in *Hernandez* until after trial, as hindsight suggests it should have, there would have been no Constitutional issue of first impression to decide.

It is now accepted faith in many places that *Bivens* grants a remedy against federal officers co-extensive with the 42 U.S.C. § 1983 remedy which would apply to a state officer similarly situated, although the Supreme Court has never actually said so and Congress has never amended the statute to apply to federal officers. However, in light of *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978) which found civil rights liability on the part of a state court judge for admittedly outrageous official conduct, and in light of the prestigious dictum of the former Fifth Circuit in *Rodriguez, supra*, it would be tempting the fates, and inviting further appellate enlargement of *Bivens* if this Court were to hold in this case, without seeing the grand jury minutes, that no matter what they contain, and no matter how outrageous they are, or how false and malicious, there is no remedy for Dr. Dale under the Constitution, this assuming, as defendants apparently do, that on full study of the point this Court would so hold.

We decline to reach this great Constitutional issue without seeing the minutes, because of a well founded judicial hunch based on experience in many narcotics trials, which tells us that when these minutes are produced the claimed perjury and malice of Steinberg will turn out to be as evanescent as the claimed blows that *Lattimore* was alleged to have inflicted on *Hernandez, supra*. We cannot rely on our judicial hunch in deciding motions for summary judgment. One look, in bridge, is better than two finesses. Therein lies the particularized need.

Production to counsel and the Court is ordered of the grand jury testimony of Steinberg and of any other defendant in this case who was actually served in this action and who testified prior to the handing down of the indictment in 73 Cr. 163. The Government may, if so advised, submit a protective order limiting access thereto to the Court, counsel in this action and the remaining plaintiff, restricting copying or

---

on Judge Learned Hand's reasoning in *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) that it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation," a concept lost on the *Bivens* court and overlooked in most post-*Bivens* cases. The dissent in *Charles* would limit witness immunity to "good faith" testimony. How can testimony which is perjured ever be given in good faith?

publication, and containing any other provisions not inconsistent with the foregoing.

As requested at the oral argument, such production is stayed pending appeal and the Government may present a protective order without waiving its right to appeal.[2]

So Ordered.

2. Pending production of the grand jury minutes or appellate finality, the Court will withhold decision on all aspects of the substantive motions to dismiss and/or for summary judgment.