**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-3194

———————

ALITO TIJWAN CROSS,
                    Appellant

v.

BUSCHMAN; PHYSICIAN'S ASSISTANT WICKHAM; H. QUAY

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-22-cv-00098)
District Judge: Honorable Christopher C. Conner

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2024

Before: SHWARTZ, MATEY, and PHIPPS, *Circuit Judges*.

(Opinion filed: July 3, 2024)

———————

OPINION*

———————

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

After prison officials failed to treat his diabetes, Plaintiff-Appellant Alito Cross brought this *Bivens* action alleging Defendants-Appellees ("Officials") acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment. The District Court dismissed the complaint, holding that no *Bivens* remedy is available in this context. We will vacate the District Court's order and remand for further proceedings.

## I.

Cross is a federal prisoner with diabetes. Cross alleges that he repeatedly passed out from diabetic complications. Though he sought medical care, Defendant-Appellee Buschman, a doctor at the prison, allegedly failed to provide appropriate treatment.

Cross then sued Buschman and two other prison officials (Appellees Wickham and Quay) for deliberate indifference under the Eighth Amendment asking for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and *Carlson v. Green*, 446 U.S. 14 (1980).

Exercising its power to screen prisoner complaints under 28 U.S.C. § 1915A, the District Court dismissed Cross's complaint with prejudice, concluding that no *Bivens* remedy is available in this context. The District Court did not address whether Cross had sufficiently pled a constitutional violation. Instead, the Court held that Cross's claim presented a new *Bivens* context because Cross failed to allege that he suffered any harm caused by the lack of medical care. The District Court also held that the Federal Bureau of Prisons' administrative remedy system was a special factor counseling against and

2

ultimately precluding the extension of a *Bivens* remedy and denied leave to amend. Cross timely appealed.[1]

## II.

*Bivens* held that the Fourth Amendment itself "gives rise to a cause of action for damages consequent upon" a violation of the provision by a federal official, 403 U.S. at 389, and *Carlson* extended that remedy to federal prisoners alleging deliberate indifference to serious medical needs, 446 U.S. at 18–23. To determine whether *Bivens* and *Carlson* allow Cross to sue for damages,[2] we must first ask whether this case "presents 'a new *Bivens* context,'" an inquiry that requires determining whether Cross's claim is "'meaningful[ly]' different" from *Carlson. Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). If the "claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. (quoting *Ziglar*, 582 U.S. at 136).

The Officials do not defend the District Court's conclusion that Cross's claim presents a new *Bivens* context based on Cross's alleged failure to plead that he suffered any harm caused by purportedly deliberate indifference. And for good reason. Construed

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal under § 1915A and review a dismissal for failure to state a claim *de novo. Dooley v. Wetzel*, 957 F.3d 366, 373–74 (3d Cir. 2020).

[2] To prevail on his claim, Cross must "show that the [Officials] violated his Eighth Amendment rights." *Dongarra v. Smith*, 27 F.4th 174, 177 (3d Cir. 2022). Since the District Court did not decide whether Cross has plausibly alleged an Eighth Amendment violation, we need not address that issue here.

liberally, as we must at this stage, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976),

Cross's complaint alleges that he suffered impaired vision, mental stress, and several

episodes of lost consciousness, all stemming from his untreated diabetes.[3]

On appeal, the Officials raise various alternative grounds for affirmance, including

arguments for why Cross's claim presents a new *Bivens* context. But none were

addressed by the District Court, and we leave these arguments for remand. *See Gov't of

V.I. v. Charleswell*, 24 F.3d 571, 577 (3d Cir. 1994).[4]

\* \* \*

For these reasons, we will vacate the District Court's order and remand for further

proceedings consistent with this opinion.

---

[3] These allegations distinguish this case from *Dongarra*, where the plaintiff was never harmed. 27 F.4th at 180–81. Here, Cross alleges actual harm from the Officials' alleged deliberate indifference.

[4] We note that this Court has previously rejected the Officials' argument that congressional silence in the Prison Litigation Reform Act of 1995 precludes a *Bivens* remedy. *See, e.g.*, *Bistrian v. Levi*, 912 F.3d 79, 92–93 (3d Cir. 2018); *Mack v. Yost*, 968 F.3d 311, 323–24 (3d Cir. 2020). We do not address whether there may be other circumstances suggesting Cross's claim presents a new *Bivens* context.

Judge Shwartz agrees with the judgment to vacate the dismissal order because, among other things, she agrees with the rulings of other circuit courts that *Carlson* currently remains good and binding law post-*Egbert*. *See Snowden v. Henning*, 72 F.4th 237, 242 (7th Cir. 2023) (observing, post-*Egbert*, that the "Court has stopped short of overruling the *Bivens* trilogy"), *petition for cert. filed*, No. 23-976 (U.S. Mar. 6, 2024); *Bulger v. Hurwitz*, 62 F.4th 127, 136–37 (4th Cir. 2023) (observing, post-*Egbert*, that the Supreme Court "has chosen not to overrule its three *Bivens* cases, electing instead to severely limit the reach of *Bivens* by imposing a highly restrictive two-step analysis").

MATEY, *Circuit Judge*, concurring.

"Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement," *DeVillier v. Texas*, 144 S. Ct. 938, 943 (2024), but *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), created one. In recent years, the Supreme Court has "cabined" *Bivens*' "scope, undermined its foundation, and limited its precedential value." *Hernandez v. Mesa*, 589 U.S. 93, 118 (2020) (Thomas, J., concurring). But *Bivens* lives on in three discrete contexts that now sit uncomfortably with the historically grounded restraint on inferred causes of action. I write separately to explain why those lingering settings raise recurring questions about the role of the President in executing the laws.

## I.

There is little new to say about *Bivens* beyond a bit of history and a recap of where things stand.

Though "[t]he Constitution is almost completely silent concerning the remedies to be employed for its implementation," Alfred Hill, *Constitutional Remedies*, 69 Colum. L. Rev. 1109, 1118 (1969),[1] actions for damages against federal officials are nothing new.

---

[1] "To the framers, special provision for constitutional remedies probably appeared unnecessary, because the Constitution presupposed a going legal system, with ample remedial mechanisms, in which constitutional guarantees would be implemented." Richard H. Fallon, Jr. & Daniel J. Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 Harv. L. Rev. 1731, 1779 (1991). An assumption that played out in practice, as for most of our Nation's history "constitutional 'public law' protections [have been] intricately bound up with—indeed, presuppose[d]—a general backdrop of 'private law' protections defining primary rights of personal property and bodily liberty." Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 Yale L.J. 1425, 1507 (1987).

1

From the Founding[2] to the middle of the twentieth century, federal officials who injured

private parties in violation of the Constitution routinely faced damages actions in state

---

[2] *See, e.g.*, *Little v. Barreme*, 6 U.S. (2 Cranch) 170 (1804) (Marshall, C.J.) (holding federal official was subject to a damages suit for trespass when the official conducted an unlawful seizure); *Imlay v. Sands*, 1 Cai. R. 566 (N.Y. Sup. Ct. 1804); *Wise v. Withers*, 7 U.S. (3 Cranch) 331 (1806) (Marshall, C.J.); *Gelston v. Hoyt*, 16 U.S. (3 Wheat.) 246 (1818) (Story, J.). This early practice continued throughout the nineteenth century. *See, e.g.*, *Mitchell v. Harmony*, 54 U.S. 115 (1851); *United States v. Lee*, 106 U.S. 196 (1882); *cf.* James E. Pfander & Jonathan L. Hunt, *Public Wrongs and Private Bills: Indemnification and Government Accountability in the Early Republic*, 85 N.Y.U. L. Rev. 1862 (2010) (using congressional records between 1789 and 1860 to collect examples of judgments against federal officers for which the officers sought indemnification); *Wheeldin v. Wheeler*, 373 U.S. 647, 652 (1963) ("When it comes to suits for damages for abuse of power, federal officials are usually governed by local law."). Even before the Founding, the Crown's agents could be held liable for damages in a suit at common law. *See* Louis L. Jaffe, *Suits against Governments and Officers: Sovereign Immunity*, 77 Harv. L. Rev. 1, 1–2 (1963) ("From time immemorial many claims affecting the Crown could be pursued in the regular courts if they did not take the form of a suit against the Crown. . . . If the subject was the victim of illegal official action, in many cases he could sue the King's officers for damages. . . . This was the situation in England at the time the American Constitution was drafted.").

Courts rarely required a constitutional violation to be part of the plaintiff's complaint, and the federal official's status appeared as a defense. *See* Jennifer L. Mascott & R. Trent McCotter, *Egbert v. Boule: Federal Officer Suits by Common Law*, 2021–2022 Cato S. Ct. Rev. 111, 132–34 (2022); Fallon & Meltzer, *supra*, at 1781 ("In many cases, a plaintiff denied relief from the sovereign could seek alternative redress from the official through whom the government had acted; a tradition arose under which an official who pleaded a defense of official authority would be 'stripped' of that shield when his conduct violated the Constitution, and hence held liable like a private tortfeasor."). But common law causes of action—like trespass or conversion—were still the vehicle to vindicate the violation of an underlying constitutional right. *See Buchanan v. Barr*, 71 F.4th 1003, 1014–15 (D.C. Cir. 2023) (Walker, J., concurring); Amar, *supra*, at 1506–07.

and federal court.[3] It was a system that stood stable for nearly two centuries[4] before

*Bivens* created a damages remedy inferred from the Constitution. The project continued

in *Davis v. Passman,* 442 U.S. 228 (1979), and reached its high watermark in *Carlson v.*

*Green*, 446 U.S. 14 (1980), which presumes an implied action for any alleged

constitutional harm and then requires the defendants to: 1) "demonstrate 'special factors

counselling hesitation in the absence of affirmative action by Congress'"; or 2) "show

that Congress has provided an alternative remedy which it explicitly declared to be a

_____

[3] A practice that continued even after *Bivens*. *See, e.g.*, *Hernandez v. Lattimore*, 612 F.2d 61 (2d Cir. 1979); *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977). The ratification debates provide some evidence that the Founding generation saw these suits as important checks on federal power. *See* Mascott & McCotter, *supra*, at 131; Andrew Kent, *Lessons for* Bivens *and Qualified Immunity Debates from Nineteenth-Century Damages Litigation Against Federal Officers*, 96 Notre Dame L. Rev. 1755, 1758 (2021) ("It is well known and uncontroversial that the Framers and ratifiers of the Constitution in 1787–88 expected that common law or general law would supply forms of action to contest many kinds of misconduct by federal officers."). Which is consistent with Founding-era judicial assumptions as no court (and least none that I can find) explored whether the Constitution itself provided a means to recover damages for constitutional violations by a federal actor. *Cf. Bell v. Hood*, 327 U.S. 678, 684 (1946) (stating that whether a federal court "can grant money recovery for damages said to have been suffered as a result of federal officers violating" federal constitutional rights in the absence of a statutory cause of action is a "question [that] has never been specifically decided by this Court").

[4] Things began to change in the early twentieth century. *Erie*'s arrival brought about the death of general law causes of action. *See Hernandez*, 589 U.S. at 100–01, 110 n.8; James E. Pfander, *Iqbal,* Bivens*, and the Role of Judge-Made Law in Constitutional Litigation*, 114 Penn St. L. Rev. 1387, 1415 (2010); *O'Connor v. Eubanks*, 83 F.4th 1018, 1028 & n.4 (6th Cir. 2023) (Thapar, J., concurring) (discussing *Erie*'s impact on remedies available for violating the Fifth Amendment's Takings Clause). A path that some argue could have been avoided, even accepting *Erie*'s premises. *See* Carlos M. Vázquez & Stephen I. Vladeck, *State Law, the Westfall Act, and the Nature of the* Bivens *Question*, 161 U. Pa. L. Rev. 509, 540–42 (2013). That left state law as the primary constitutional gap filler providing the means to remedy constitutional violations. At least until federal legislation limited the availability of state tort suits against federal officers. *See id.* at 566–82.

*substitute* for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18–19 (quoting *Bivens*, 403 U.S. at 396).

In the years since, the Supreme Court has considered—and declined—some twelve requests to imply a new cause of action for damages under the Constitution.[5] In doing so, the Court has reframed the *Bivens* inquiry, discarded *Carlson*'s reasoning, and directed courts to presume that *Bivens* does not apply. *See Egbert v. Boule*, 596 U.S. 482, 490–94 (2022). In addition, where *Carlson* focused exclusively on alternative remedies provided by Congress, 446 U.S. at 19–23, newer decisions consider the availability of administrative remedies, *see, e.g.*, *Egbert*, 596 U.S. at 497–98; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). And those alternative remedies, whether regulatory or legislative, need not provide the same relief as a *Bivens* damages action. *See Egbert*, 596 U.S. at 493 ("Nor does it matter that 'existing remedies do not provide complete relief.'" (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983))). Or even "explicitly declared to be a substitute" for a *Bivens* claim. *See Egbert*, 596 U.S. at 501 (emphasis omitted). The judgment in *Carlson* may survive, but its reasoning does not.

---

[5] *See Chappell v. Wallace*, 462 U.S. 296 (1983); *Bush v. Lucas*, 462 U.S. 367 (1983); *United States v. Stanley*, 483 U.S. 669 (1987); *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *FDIC v. Meyer*, 510 U.S. 471 (1994); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); *Wilkie v. Robbins*, 551 U.S. 537 (2007); *Hui v. Castaneda*, 559 U.S. 799 (2010); *Minneci v. Pollard*, 565 U.S. 118 (2012); *Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Hernandez*, 589 U.S. at 96; *Egbert v. Boule*, 596 U.S. 482 (2022). We have followed that guidance and recognize the possibility of a damages suit only if the facts alleged are nearly identical to *Bivens*, *Passman*, or *Carlson*. *See, e.g.*, *Xi v. Haugen*, 68 F.4th 824, 834 (3d Cir. 2023) (noting even factually similar claims are new contexts if they differ in "any 'meaningful way'" (quoting *Ziglar*, 582 U.S. at 139)).

## II.

The result is real tension and new constitutional problems where, as here, the

Officials argue that the Federal Bureau of Prisons has eliminated the need for any *Bivens*

inquiry by promulgating an administrative remedy program. That alternative process, the

Officials conclude, means Cross cannot resort to *Bivens*. Presumably, the same result

would follow in *any* action by a federal prisoner against federal officials for damages.

That might well be right. While the Supreme Court has declined to overrule

*Carlson*,[6] it has said that "a new context arises when there are 'potential special factors

that previous *Bivens* cases did not consider.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar v.*

*Abbasi*, 582 U.S. 120, 140 (2017)). The BOP's administrative grievance process seems

like a special factor creating a new *Bivens* context.[7] And none of the opinions in *Carlson*

---

[6] *See, e.g.*, *Malesko*, 534 U.S. at 72. *Malesko* involved an Eighth Amendment deliberate indifference claim by a federal prisoner. Though the Court declined to recognize a *Bivens* remedy because it found the case to arise in a new context, the majority still recognized the continued existence of a *Carlson* claim. *See id.* ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity."). Even Justice Scalia, a famed *Bivens* critic, would have preserved some form of a *Carlson* claim. *See id.* at 75 (Scalia, J., concurring) ("I would limit *Bivens* and its two follow-on cases (*Davis v. Passman,* 442 U.S. 228 (1979), and *Carlson v. Green,* 446 U.S. 14 (1980)) to the precise circumstances that they involved.").

[7] *See Malesko*, 534 U.S. at 74 (discussing the availability of the BOP's administrative remedy program as a factor cutting against extending a *Carlson* claim to a new context); *Mack v. Yost*, 968 F.3d 311, 320–21 (3d Cir. 2020) (recognizing BOP's administrative remedy program as a special factor precluding a *Bivens* claim for First Amendment retaliation); *Bulger v. Hurwitz*, 62 F.4th 127, 140–41 (4th Cir. 2023); *cf. Egbert*, 596 U.S. at 497–98 (discussing administrative remedies as a special factor precluding a *Bivens* extension). *Mack* suggested that the BOP's administrative remedies may be insufficient if an inmate suffers physical injury. *See* 968 F.3d at 321 & n.9; *see also Bistrian v. Levi*, 912 F.3d 79, 92 (3d Cir. 2018). But that qualification conflicts with

considered the BOP's administrative remedies because special factors and alternative remedies were treated separately.[8] All suggesting that *Carlson* does not disturb the best reading of *Egbert* requiring courts to consider whether the BOP's administrative remedies foreclose resort to *Bivens*. *See Egbert*, 596 U.S. at 501 ("[A] plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." (quoting *Ziglar*, 582 U.S. at 139)); *see also id.* at 491 ("'[E]ven a single sound reason to defer to Congress' is enough to require a court to refrain from creating such a remedy." (alteration in original) (quoting *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 635 (2021) (plurality)).[9] That result is confirmed by the importance of the Executive's independent authority under Article II to address alleged constitutional violations.

---

*Egbert*'s caution "[n]or does it matter that 'existing remedies do not provide complete relief.'" 596 U.S. at 493 (quoting *Bush*, 462 U.S. at 388).

[8] *See Carlson*, 446 U.S. at 18. More recent decisions view alternative remedies as special factors. *See, e.g.*, *Egbert*, 596 U.S. at 493 ("If there are alternative remedial structures in place, 'that alone,' *like any special factor*, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" (emphasis added) (quoting *Ziglar*, 582 U.S. at 137)); *Mack*, 968 F.3d at 320–21 (considering alternative remedial schemes as a special factor); *Xi*, 68 F.4th at 836–37 (same).

Timing may be the answer: the BOP's grievance process was not codified until 1979, *after* the conduct at issue in *Carlson* occurred. *See Control, Custody, Care, Treatment, and Instruction of Inmates*, 44 Fed. Reg. 62248 (Oct. 29, 1979).

[9] A conclusion recently reached by a panel in the Tenth Circuit. *See Noe v. United States*, No. 23-1025, 2023 WL 8868491, at *2–3 (10th Cir. Dec. 22, 2023).

## A.

The Constitution of 1787 is framed to reflect broad and eternal principles[10] and did not endeavor to enact "a comprehensive code." Stephen E. Sachs, *Constitutional Backdrops*, 80 Geo. Wash. L. Rev. 1813, 1821 (2012). Of design, it "does not answer, or even address, every important question of government, politics, law, or rights," including how the document itself is to be implemented. Michael Stokes Paulsen, *The Text, the Whole Text, and Nothing but the Text, So Help Me God: Un-Writing Amar's Unwritten Constitution*, 81 U. Chi. L. Rev. 1385, 1386 (2014) (book review). Instead, the Constitution hinges on preexisting rules emanating from other sources of law, positive, common, and natural. That leaves ample room for future state and federal actors to prescribe rules for its operation based on "a range of interpretive and policy choices." *Id.*

As now framed, *Bivens* forces an examination of who decides what remedies are available when federal officials violate a constitutional right. For much of our Nation's history, state governments provided state law causes of action consistent with their "coordinate responsibility to enforce the Constitution according to their regular modes of procedure," *DeVillier*, 144 S. Ct. at 944 (alterations omitted) (quoting *Howlett v. Rose*, 496 U.S. 356, 367 (1990)), and the presumption of preexisting law working in concert with constitutional implementation. *Bivens*, *Davis*, and *Carlson* changed tack to place the federal courts in charge of setting the terms of constitutional remedies, disrupting the constitutional settlement that had placed states in the remedial driver's seat. Immediately,

---

[10] *See*, *e.g.*, Edward S. Corwin, *The "Higher Law" Background of American Constitutional Law*, 42 Harv. L. Rev. 365 (1929).

the impact to both local and federal legislative authority became clear. *See, e.g.*, *Bivens*, 403 U.S. at 418 (Burger, C.J., dissenting) (criticizing the majority for creating a cause of action for damages "at the price of impinging on the legislative and policy functions that the Constitution vests in Congress"); *id.* at 428–29 (Black, J., dissenting) ("[T]he fatal weakness in the Court's judgment is that neither Congress nor the State of New York has enacted legislation creating such a right of action. . . . The task of evaluating the pros and cons of creating judicial remedies for particular wrongs is a matter for Congress and the legislatures of the States."). Of less attention is the loss of Executive power caused by *Bivens*.

The President is no bystander to the execution of the laws and is sworn to "preserve, protect and defend the Constitution of the United States." U.S. Const. art. II, § 1, cl. 8. That duty "imposes an obligation on all Presidents to safeguard the Constitution," Saikrishna Prakash, *The Executive's Duty to Disregard Unconstitutional Laws*, 96 Geo. L.J. 1613, 1629 (2008), and requires an "active role in precluding constitutional violations," *id*. at 1628 n.55. The President's duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, encompasses the setting of constitutional policy, the supervision of subordinates charged with carrying out that intent, and the balancing of the sensitive interests embedded in constitutional choice. *See* Prakash, *supra*, at 1632 ("The Faithful Execution duty arguably extends to the Constitution itself because the Supremacy Clause expressly makes the Constitution the law of the land."). These, and other provisions, assign the President deep and demanding duties in implementing the guarantees of the Constitution, including the prohibitions in

8

the Eighth Amendment. A role that sensibly includes monitoring the conduct of Executive Branch employees and addressing errors, omissions, and misconduct.

## B.

*Bivens* poses a direct challenge to the authority of the Executive. When a federal court creates a federal remedy against an Executive employee that Congress has not presented to the President for signature, it is necessarily impinging upon "[t]he executive Power . . . vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. The President's duty to "take Care that the Laws be faithfully executed," *id*. § 3, is why courts now consider administrative remedies in determining whether to recognize a *Bivens* extension. *See, e.g.*, *Egbert*, 596 U.S. at 497–98; *Malesko*, 534 U.S. at 74. Remedial programs reflect the Executive's judgment about how wrongful acts should be addressed, alleviated, and compensated.

That is the case here. Congress charged the President, and his subordinate the Attorney General, with implementing federal prison programs. *See* 18 U.S.C. §§ 4001(b)(1), 4042. In carrying out Congress's commands, the President holds an independent duty to ensure that the Constitution's guarantees are followed within federal prisons.[11] That duty includes efforts to prevent and remedy deliberate indifference to the

---

[11] *See* Steven G. Calabresi & Christopher S. Yoo, The Unitary Executive: Presidential Power from Bush to Washington 23 (2008) (coordinate construction of Article II presidential powers is "especially appropriate when separation of powers matters are involved"); Gary Lawson & Christopher D. Moore, *The Executive Power of Constitutional Interpretation*, 81 Iowa L. Rev. 1267, 1287 (1996) ("Once the President has interpreted the law that he has the power to enforce or execute, a second interpretative stage emerges: the President must then determine whether the law is consistent with the Constitution. The President, no less than Congress or the courts,

medical needs of federal prisoners. *See* §§ 4001(b)(2), 4042(a); *see also* 18 U.S.C. § 4005 (providing for funding and use of medical providers within federal prisons).

The President has answered that call in the BOP's administrative remedy program. *See* 28 C.F.R. §§ 542.10–542.19. That response deserves deference or, at a minimum, serious consideration and respect in determining whether a damages action under *Bivens* and *Carlson* should be recognized here.[12]

\* \* \*

The Eighth Amendment binds all federal actors, and the President has a duty to ensure his subordinates comply with the Amendment's demands. But when it comes to the specific means of implementing the Amendment, including remedies for violations, the Constitution leaves it to the states, Congress, and the Executive. Because the Officials' argument concerning the effect of the BOP regulations was not addressed by

---

operates under the Constitution as supreme positive law. . . . The need to interpret the Constitution as a source of positive law, and to prefer the Constitution to any other source of law with which it may conflict, is as much a part of '[t]he executive Power' vested in the President as it is part of '[t]he judicial Power' vested in the federal courts. The Constitution is law, and the executive power of law interpretation includes the power and duty to interpret the Constitution.").

[12] Note that at least some Eighth Amendment claims may be actionable as medical negligence claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (as Cross originally pled his complaint). The FTCA also permits "civil action[s] . . . brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). As Judge Walker has explained, reading § 2679(b)(2)(A) to permit state tort actions for federal constitutional injuries "finds support in the text of the statute, accords with Founding-era principles of officer accountability, and closes a remedial gap—ensuring relief for those injured by federal officers' unconstitutional conduct." *Buchanan*, 71 F.4th at 1017 (Walker, J., concurring).

the District Court, we rightly decline to consider the question.[13] But in an appropriate case, we should consider whether the administrative remedy program used by the BOP precludes relief under *Carlson*.

---

[13] The District Court addressed the Officials' argument that the administrative remedy program was a special factor precluding a *Bivens* extension to a new context. But it did not address the argument that the administrative remedy program itself creates a new context.