Louis I. Kaplan, J.
Plaintiff insurance company brings this action for a declaratory judgment holding that it is not obligated to pay any amount awarded against the insured defendant, Dr. Kenneth Levy, or to otherwise indemnify him under its malpractice liability policy.
On August 17, 1973, Dr. Levy, a dentist specializing in oral surgery, extracted a tooth from Ada Colon, and thereafter prescribed penicillin and darvon.
It is difficult to tell from the autopsy report which medication, or how much of each, was ingested by Mrs. Colon. However, the report indicates she took at least one penicillin pill: "Returned home about an hour later and took an oral tablet prescribed by the dentist following which she developed pallor at home beginning about five minutes after taking the oral medication”. She died in Harlem Hospital about 4:00 a.m. the next morning.
At some time during the next week, Dr. Levy received a telephone call from a physician in the chief medical examiner’s office stating Mrs. Colon may have died from an allergic reaction to penicillin and an attempt was being made to ascertain the cause of death.
The insured made no immediate report of the telephone call or of the death of his patient to the plaintiff. On September 18, 1974 he was served with a summons and complaint alleging his negligence in connection with Mrs. Colon’s demise, and sent this process to his insurance broker. The latter forwarded *926 these papers to the plaintiff, and they were received by the carrier on September 24, 1974.
Pending the outcome of this action, plaintiff is defending Dr. Levy in the malpractice suit, but has reserved its right to disclaim coverage.
Prior to August 17, 1973, the plaintiff issued a liability policy to the defendant, Dr. Levy, which provided in pertinent part: "6. Procedure of insured in claim or suit. An insured, in the event of receiving notice of claim or suit, or any unusual occurrence, shall advise the Company, or its Agent, or its Branch Office, as soon as possible, and thereafter shall as soon as possible forward to the Company’s representative any summons or process served, or any information received, and otherwise render the Company all assistance possible.”
The issue raised in this action is whether the insured complied with the notice requirement contained in said policy.
That in turn leads to the question before this court: may plaintiff legally disclaim? The answer is no, for the reasons set out below.
At the outset, it is to be noted: whether by design or inadvertence, the conditions for giving notice set out in paragraph 6 of the policy, quoted above, are misleading in that they refer to "Procedure of assured in claim or suit,” while the paragraph itself provides that "An insured, in the event of receiving notice of claim or suit, or any unusual occurrence, shall advise the Company, or its Agent”. A busy professional man, reading the policy in the midst of the day’s many activities, may well be led to believe he need notify the company only if there is a "claim” or "suit” against him, rather than simply "any unusual occurrence.”
The State Insurance Department is at fault in connection with the foregoing because of its failure to insist on deleting ambiguous and misleading language in the malpractice insurance policies issued in this State. The function of such a regulatory agency is to ensure equity both to policyholder and company, not only in rates but in the extremely important realm of giving the public proper coverage in return for premium payments. In such respect, the Insurance Department has failed.
How long will it be before the State Insurance Department insists on simplifying the wording of policies, cutting down the excess, incomprehensible language which so often increases *927 their length while decreasing their clarity? How long before this body does the job which is its central function — and does it with the meticulousness and industry that the public has a right to expect? To this court it is a crying, miserable shame that fine print, with page after page of circumlocatory language, is to this day allowed to permeate most policies, without the slightest basis or justification for the time and money this sort of practice inevitably wastes!
While it is true that many and diverse cases deal with whether or not late notice vitiates coverage, each such reported decision gives only the rules covering its own particular set of facts. None delineates guidelines for dealing with the question as a whole, regardless of the fact pattern involved. We will attempt to do so.
What is or is not "late notice” does not lend itself to an iron-bound definition, but calls for an equitable balancing in which neither the insured nor insurer is needlessly hurt. Such balancing requires stepping between Scylla and Charybdis.
How then must the court strike a balance?
What criteria are to be used by the court in deciding whether disclaimer is permissible?
The following three cornerstones have evolved from the cases:
1. The court will not treat the notice requirement as an inviolable condition precedent.
In Gluck v London & Lancashire Ind. Co. (207 Misc 471, revd 2 AD2d 751, affd 2 NY2d 953), the policy covered liability arising from operation of an oil truck and the insured testified that he did not understand that the coverage included the hose connection between truck and fill box. The trial court treated the requirement of notice as a strict, contractual condition precedent to coverage, and therefore held that failure to give notice within the time prescribed by the policy necessitated a directed verdict for the carrier as a matter of law. The Appellate Division reversed and the Court of Appeals affirmed the reversal, holding that a triable issue of fact existed.
The holding is similar to that found in Rushing v Commercial Cas. Ins. Co. (251 NY 302, 304), in which Chief Judge Cardozo stated: "There may, indeed, be circumstances, such as absence from the State or lack of knowledge of the accident, that will explain or excuse the delay and show it to be *928 reasonable.” He added that the burden of showing such reasonable excuse rests on the insured. Incidentally, the court indicated that there was prompt notice of disclaimer, and it implied that the failure of such promptness might result in estoppel to the carrier. (See, also, Greenwich Bank v Hartford Fire Ins. Co., 250 NY 116; Solomon v Continental Fire Ins. Co., 160 NY 595; Black Co. v London Guar. & Acc. Co., 190 App Div 218, 221, affd 232 NY 535.)
2. If an insufficient excuse or no excuse at all is advanced for a delayed notice, disclaimer is upheld as a matter of law. This is true regardless of whether the carrier is or is not prejudiced by the delay. The sufficiency of an excuse is for the jury to decide unless it is patently without merit, in which case the court will permit disclaimer as a matter of law.
Deso v London & Lancashire Ins. Co. of Amer. (3 NY2d 127, 130) concerns a tenant in the insured’s premises who claimed injury from a fall on stairs. The policy required that an "occurrence” be reported to the carrier "as soon as practicable.” Fifty-one days elapsed between the insured’s knowledge that serious injury had resulted from the fall and notice to the insurer. Though there is no mention of prejudice to the carrier resulting from the delay, the court held (p 130) that: "An unexcused delay of that length constitutes a breach of condition as a matter of law”. (Emphasis added.)
On the other hand, if, in the light of ordinary common sense, a delay in giving notice is deemed reasonable by the jury, disclaimer will not be allowed. Thus, in Melcher v Ocean Acc. & Guar. Corp. (226 NY 51), a repairman working on an I-beam between two elevator shafts was jostled by an elevator, raising him about a foot. The worker, thereafter, told the superintendent of the building that he had not been injured, and indeed continued to work during that afternoon until the job was finished. On these facts, it was held proper for the jury to find that the notice, given, some three months after the accident had occurred, was timely, since the insured reasonably believed the matter too trivial to report.
In addition, see Vanderbilt v Indemnity Ins. Co. of North Amer. (265 App Div 495 [notice given 28 days after the accident allowed disclaimer as a matter of law, though there is no mention of prejudice to the insurer]); American Sur. Co. of N.Y. v Mariani (130 NYS2d 755, affd 286 App Div 1083 [similar holding for a seven-month delay]); and Century Ind. *929 Co. v Hartford Acc. & Ind. Co. (130 NYS2d 844 [like decision in connection with unexcused delay of more than a year]).
3. Reasonable belief of nonliability will excuse a delay in giving notice.
In 875 Forest Ave. Corp. v Aetna Cas. & Sur. Co. (37 AD2d 11, affd 30 NY2d 726), a three-year-old child fell from a window on July 16, 1966 and was killed. The insured had no reason to believe that it was responsible, since no defect in the building caused the accident, and therefore it did not report the occurrence until its receipt of an attorney’s letter on September 13, 1967, indicating a claim against it. The court decided that the notice was given "as soon as practicable”, within the policy terms, in view of the insured’s reasonable belief of nonliability.
The basis for the court’s decision is similar to that found in Marallo v Aetna Cas. & Sur. Co. (148 NYS2d 378). Plaintiffs, subcontractors, completed a job of excavation and related work on July 5, 1946. By letter dated August 7, 1946, they were told by the prime contractor that it was holding them responsible for an accident which had occurred on that day. After investigating the circumstances, plaintiffs found no reason to believe that they were involved, having completed their work the previous July 5, and they so informed the general contractor. The carrier was not notified of the accident until a summons was served on plaintiffs in February, 1947. The court thereupon held that plaintiff’s reasonable, good faith belief in nonliability excused the delayed notice.
However, there is a condition to the foregoing: in order for a belief of nonliability to excuse late notice, the insured must act reasonably, which in turn requires that its belief be implemented by whatever investigation would be made under the circumstances by a prudent man. Failing such investigation, the court will permit disclaimer as a matter of law. Accordingly, in Haas Tobacco Co. v American Fid. Co. (226 NY 343), the policy called for "immediate notice” of an accident to the carrier. One of the plaintiff’s machines struck a boy, and the insured’s manager accepted the driver’s judgment that the injury was too slight to warrant reporting the accident, so that no investigation was made. The accident was not reported until 10 days later. Disclaimer was permitted as a matter of law.
The above three pillars of New York law, which have been filtered down and settled by a long, varied series of cases, *930 extending over many years, cannot possibly cover each possible combination of circumstances and do not purport to do so. Rather, they provide guidelines applicable in any case where notice is given later than the policy seems to require; they supply a leitmotif, a rationale, pointing the way to an equitable balance between the conflicting nuances that shimmer constantly between insured and insurer.
Let us apply the above to this case.
1. The requirement that Dr. Levy give notice of an "unusual occurrence” to Public Service Mutual as soon as possible is not an inviolable condition to coverage. However, the telephone call from the medical examiner’s office was unquestionably unusual, since it is fair to assume that the doctor did not receive such calls regularly, and therefore, he was required to inform the company of it.
2. If there is a meritorious excuse for late notice, the doctor is, nonetheless, relieved of any onus attached to the delay.
3. Reasonable belief of nonliability is such a meritorious excuse. Dr. Levy’s October 8, 1976 statement includes the following: "Question of allergy to penicillin was put to patient and negative answer received * * * Normal medical history, including use of penicillin was taken prior to surgery and every effort expended to insure the safety and the health of the patient.” No more could be expected, for it would have been a practical impossibility for him to inquire more deeply, nor is it customary to do so. Further, after hearing from the medical examiner, inspection of the hospital record would have yielded nothing germane to the malpractice suit subsequently commenced against him. Let us suppose that the doctor made such examination and that it indicated the worst, that penicillin caused the death. It is still true that Dr. Levy could not have known of a possible allergic reaction at the time that he prescribed the medication, simply because Mrs. Colon indicated that none was to be anticipated. Thus, the doctor had every reason to believe he was not liable even after learning of her death.
As a makeweight, Public Service has suffered no apparent prejudice: all the evidence, all the factual information that would have been available to it in the event of an immediate report by the doctor is still available. To deny him coverage in this instance would work a concrete, pointless injustice.
It is the finding of this court that Dr. Levy is entitled to a defense of the malpractice action against him from Public *931 Service Mutual Insurance Company, and, further, that the company is required to pay any judgment which may be recovered against the doctor, limited, of course, only by the amount of coverage it provides in the instant case.