MOUNT VERNON FIRE INSURANCE
COMPANY, Plaintiff,

v.

DLRH ASSOCIATES, Kettley Henry,
and Wade Golden, Defendants.

No. 95 Civ. 3460(SAS).

United States District Court,
S.D. New York.

June 5, 1997.

Michael A. Miranda, Thurm & Heller, L.L.P., New York City, for Plaintiff.

Daniel Galinson, Kaplowitz & Galinson, Garden City, NY, for Defendant DLRH Associates.

## AMENDED OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Mount Vernon Fire Insurance Company ("Mt.Vernon") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for a declaratory judgment stating that Mt. Vernon has no duty to defend or indemnify defendant DLRH Associates ("DLRH") in the pending state action *Kettley Henry v. DLRH Associates and Wade Golden.*[1] Defendant DLRH opposes this motion and cross-moves for summary judgment and for a declaratory judgment stating that Mt. Vernon does have a duty to defend and indemnify DLRH.

In an Opinion and Order dated May 6, 1997, I found that DLRH had failed to notify Mt. Vernon of Kettley Henry's accident within a reasonable time under the circumstances. I therefore granted plaintiff's motion for summary judgment and denied defendant's cross-motion for summary judgment. However, I withdrew the May 6, 1997 Opinion and Order on May 7, 1997, because DLRH had not had an opportunity to brief the issue of notice. I have now received Supplemental Memoranda of Law and Statements of Fact Pursuant to Local Rule 3(g) — now Local Rule 56.1 — from both DLRH and plaintiff relating to this issue. For the reasons set forth below, plaintiff's motion is granted, defendant's motion is denied.

### I.  Applicable Legal Standard

A party is entitled to summary judgment when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of a material factual

dispute rests on the moving party. *See Gallo v. Prudential Residential Svcs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). Once that burden is met, the non-moving party must present "significant probative supporting evidence" that a factual dispute exists. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

The court's role is not to try issues of fact, but rather to determine whether issues exist to be tried. *See Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir. 1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987). All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Donahue,* 834 F.2d at 57, 60. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

### II.  Factual Background

Applying the above standards, the undisputed facts of this case are as follows. On November 17, 1992, Mt. Vernon issued a commercial liability policy (the "Policy") to DLRH[2] to provide coverage for hotel operations at premises located on West 79th Street in New York City (the "Hotel"). The Policy included the following assault and battery exclusion and notice provision:

> It is agreed that no coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery, and Assault and Battery shall not be deemed an accident, whether or not committed by or at the direction of the insured ...
>
> [DLRH] must see to it that [Mt. Vernon] is notified as soon as practicable of an "occurrence[3]" or an offense which may result in

---

1. The summons and complaint in *Henry v. DLRH Associates and Wade Golden,* filed in the Supreme Court of New York County under Index Number 131053/94, were dated October 26, 1994.

2. DLRH is a limited partnership owning a premises and doing business at 117–119 West 79th

Street, New York, New York. *See* Answer of DLRH Associates, filed October 17, 1995, at ¶ 1.

3. The Policy further defines the term "occurrence" to mean "an accident". *See* Affidavit of Carl W. Lung, Mt. Vernon Claims Consultant, dated November 15, 1995 ("Lung Aff."), Ex. A at § 5(9).

a claim. To the extent possible, notice should include: (1) How, when and where the "occurrence" or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damages arising out of the "occurrence" or offense. *See* Plaintiff's Statement of Facts Pursuant to Local Rule 3(g) ("Plaintiff's 3(g) Statement"), dated November 15, 1995, at ¶¶ 3–4.

On December 12, 1992, Henry was a resident at the Hotel. Henry now claims that DLRH negligently permitted her ex-boyfriend Wade Golden ("Golden") to enter the hotel, that as a result of DLRH's negligence she was placed in fear of her safety because of Golden's presence, and that in attempting to escape from Golden she fell from the third floor of the hotel and sustained serious injuries for which DLRH is liable. *See* Plaintiff's Rule 3(g) Statement, Ex. C (Plaintiff Kettley Henry's Complaint, *Henry v. DLRH Associates and Wade Golden* ).

## III. Discussion

### A. The Notice Provision

■ An insurer is not obliged to cover the loss of its insured unless the insured gives timely notice of loss in accordance with the terms of the insurance contract. *See Power Authority v. Westinghouse Electric Corp.,* 117 A.D.2d 336, 502 N.Y.S.2d 420, 421 (1st Dep't 1986) (citing *Security Mutual Ins. Co. of New York v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972) and *Allstate Ins. Co. v. Furman,* 84 A.D.2d 29, 445 N.Y.S.2d 236 (2d Dep't 1981), *aff'd,* 58 N.Y.2d 613, 458 N.Y.S.2d 532, 444 N.E.2d 996 (1982)). *See also AXA Marine and Aviation Ins. Ltd. v. Seajet Industries Inc.,* 84 F.3d 622, 624–25 (2d Cir.1996). Without timely notice of an insured's loss, an insurer may be deprived of the opportunity to investigate the facts upon which the loss is predicated —— thereby protecting itself from fraudulent claims —— and to adjust its books in order to maintain a proper reserve fund in light of the insured's claim. *See Utica Mutual Ins. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118, 121 (2d Cir.1984). Thus, under New York law, "[t]he right of an insurer to receive notice has been held to be so funda-

mental that the insurer need show no prejudice to be able to disclaim liability on this basis [citations omitted]." *Allstate Ins. Co.,* 445 N.Y.S.2d at 239. *See also Seajet Industries Inc.,* 84 F.3d at 625(citing New York cases).

The Policy required DLRH to notify Mt. Vernon of any "occurrence" or "offense" which "may result in a claim" by written notice "as soon as practicable". Identical notice provisions "have been uniformly interpreted to require that notice be given within a reasonable time under the circumstances." *Power Authority,* 502 N.Y.S.2d at 422 (citing *Jenkins v. Burgos,* 99 A.D.2d 217, 472 N.Y.S.2d 373 (1st Dep't 1984)). New York courts have held that even relatively short periods of unexcused delay have been found unreasonable as a matter of law. *See, e.g., Deso v. London & Lancashire Ind. Co. of America,* 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957) (51 days); *Rushing v. Commercial Cas. Ins. Co.,* 251 N.Y. 302, 167 N.E. 450 (1929) (22 days); *Haas Tobacco Co. v. American Fid. Co.,* 226 N.Y. 343, 123 N.E. 755 (1919) (10 days); *Republic New York Corp. v. American Home Assurance Co.,* 125 A.D.2d 247, 509 N.Y.S.2d 339 (1st Dep't 1986) (45 days).

■ Whether a delay in notifying the insurer is reasonable is a question of fact normally left for determination at trial, but where the insured provides no excuse for the delay in notifying the insurer, and where mitigating circumstances are absent, "the issue may be disposed of as a matter of law in advance of trial." *Id. See also State of New York v. Blank,* 27 F.3d 783, 795 (2d Cir.1994); *Young v. N.Y. State Dep't of Ins., Liquidation Bureau,* 152 A.D.2d 835, 543 N.Y.S.2d 768, 769 (3d Dep't 1989). To determine whether DLRH was obliged to notify Mt. Vernon directly after Henry's injury on December 12, 1992, a trier of fact must determine "whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Sparacino v. Pawtucket Mut. Ins. Co.,* 50 F.3d 141, 143 (2d Cir.1995). *See also Beach Haven Apartments v. Allcity Ins. Co.,* 182 A.D.2d 658, 581 N.Y.S.2d 689, 690 (2d

Dep't) ("the insured's good-faith belief that it is not liable will excuse a failure to give timely notice if the belief is reasonable under all the circumstances of the case"), *leave to appeal denied,* 80 N.Y.2d 761, 592 N.Y.S.2d 670, 607 N.E.2d 817 (1992).

▮ Mt. Vernon has presented evidence that DLRH's hotel manager Haydee Rodriguez ("Rodriguez") knew that Henry had been injured in connection with an altercation with Golden as early as December 12, 1992. Rodriguez stated in pertinent part:

Ms. Henry complained to me on many occasions to not allow her boyfriend into the bldg. When I am on duty the male would disobey me and other persons and go to Room 306. The reason why Ms. Henry did not want her male friend to visit her was because he would steal her money, her jewelry because he was addicted to DRUGS. At least once every week Ms. Henry and her boyfriend would fight....

On 12/12/92 the only person that was on duty was the attendant in the Lobby office TONY GROSS or Regoerto Vergara. On 12/12/92 Sat. I was on my day off. I received a telephone call at my home from TONY GROSS and he told me come right away because Ms. Henry's male friend ran pass [sic.] him in the lobby and he took the elevator to the 3rd floor and kicked the door down in Room # 306. When the male friend entered the room, Ms. Henry opened the window and was walking on the window sill outside the bldg. in order to alert her next door neighbor.... When Ms. Henry was walking on the window sill, she fell to the street.... There were no window guards installed at the window.... I was told later by some of the tenants that either Ms. Henry was pushed from the window ledge or she fell off the ledge. Ms. Henry was removed to the St. Lukes [sic.] Hospital.

*See* Lung Aff., Ex. C ("Rodriguez Statement") at 3–5. DLRH does not contest that Henry asked the Hotel to bar Wade Golden from the premises before the December 12, 1992 incident, or that Henry was injured after an altercation with Golden on December 12, 1992. Nor is there any evidence in the record to suggest that Rodriguez's quoted statement is inaccurate.[4]

▮ In addition, DLRH now concedes that David Beit ("Beit"), the managing partner of DLRH, was informed on December 13, 1992, that Henry jumped or was pushed from a third floor window or window ledge the previous day. *See* DLRH's Supplementary Statement of Facts Pursuant to Local Rule 3(g), dated May 16, 1997, at ¶ 4. It is therefore undisputed that the Hotel manager and the managing partner of DLRH knew that Henry had fallen or been pushed from a window of her apartment on the premises. Nevertheless, relying primarily on the authority of *875 Forest Ave. Corp. v. Aetna Cas. Co.,* 37 A.D.2d 11, 322 N.Y.S.2d 53 (1st Dep't), *aff'd,* 30 N.Y.2d 726, 332 N.Y.S.2d 896, 283 N.E.2d 768 (1972), and *Beach Haven Apartments,* 581 N.Y.S.2d at 690, DLRH argues that it had no obligation to notify its insurer because Beit reasonably believed that DLRH was not liable for Henry's injuries. In the alternative, DLRH maintains that the reasonableness of DLRH's failure to notify its insurer under the circumstances is a question of fact that must be resolved at trial.

▮ I disagree. DLRH has the burden of proof in showing that its delay in

---

4. DLRH challenges the admissibility of the Rodriguez Statement on the grounds that it was not actually written by Rodriguez, that it is unsworn and that it is based on inadmissible hearsay. These arguments fail because the Rodriguez Statement is not offered for the truth of the allegations set forth therein, but rather to demonstrate that Rodriguez was aware of facts that gave DLRH actual or constructive notice that an accident had occurred on the Hotel premises for which DLRH might be liable. Because Rodriguez signed each page of her Statement after reading it, thereby ratifying the factual assertions made therein as accurate and true, there can be no question that the Rodriguez Statement is an authentic document prepared by an insurer through its claims examiner. *See* Lung Aff., Ex. C (Letter from Carl C. Pesa, United Claims Service, to Carl W. Lung, Mt. Vernon Claims Consultant, dated May 23, 1994) ("After several telephone calls, arrangements were made to personally interview Ms. Rodriquez [sic.] at which time we obtained her narrative signed statement."). It is therefore admissible for the limited purpose of demonstrating DLRH's knowledge of the December 12, 1992 incident.

giving notice to Mt. Vernon was reasonable. Furthermore, DLRH has the burden of proof in showing that it satisfied its obligation to exercise reasonable care and diligence in informing itself of the December 12, 1992 incident. *See Acker–Fitzsimons Corp.,* 340 N.Y.S.2d at 905–906, 293 N.E.2d 76 (court may consider "whether and to what extent the insured has inquired into the circumstances of the accident or occurrence" in determining claim of reasonable delay in giving notice). An insured's decision not to investigate an accident on its premises and not to inform its insurer of that accident may be excused only if a reasonable business person would have made the same decisions under the same circumstances. Hence, Beit's *subjective* belief that he had no duty to investigate the December 12, 1992 incident, or to notify Mt. Vernon that such an incident had taken place, does not in itself excuse DLRH of its obligation to do so unless that belief could be found to be reasonable under an *objective* standard.

■ New York law has long allowed tenants to sue premises owners for negligent security and negligent supervision of its premises. *See, e.g., Jacqueline S. by Ludovina S. v. City of New York,* 81 N.Y.S.2d 288, 598 N.Y.S.2d 160, 162–63, 614 N.E.2d 723, 725–26 (1993) (landlord has obligation to take reasonable precautions to protect tenants from foreseeable danger from criminal acts) (citing, *inter alia, Nallan v. Helmsley–Spear,* 50 N.Y.2d 507, 429 N.Y.S.2d 606, 613, 407 N.E.2d 451, 458 (1980)). It therefore follows that any reasonable owner or manager of commercial real estate in New York City who was informed that a tenant had jumped or was pushed out of an apartment for which he or she was responsible would make some preliminary investigation into the incident to determine whether he might be liable for the incident. Thus, under the circumstances of this case, Beit was under a legal obligation to make some investigation of the events that caused Henry's injuries once he was informed of the December 12, 1992 incident. A single phone call to Rodriguez might have satisfied this duty to investigate.

Had Beit made that call, the record shows that Rodriguez would have informed him that Henry had been injured during an altercation with Golden. Rodriguez would also have informed Beit that (1) before December 12, 1992, Henry had requested "on many occasions" that the Hotel management bar Golden from the hotel premises because she was afraid he would harm her; (2) the Hotel had failed to do so on the night of December 12, 1992; (3) Golden might have pushed Henry out of the window. These facts would necessarily have suggested to any reasonable owner of commercial real estate the possibility that Henry would bring a claim against DLRH based on its failure to bar Golden from the premises.

The cases on which DLRH relies do not support its argument, for they are factually distinguishable from this case. In *875 Forest Ave. Corp.,* for example, the insured owned a building from which a small child fell and was killed. The insured, who owned the building, visited the building and called the child's apartment to investigate the accident. The court found that, based on the facts known to the insured *after* his investigation, there "was nothing in the manner in which the accident occurred which would have suggested the possibility of a liability claim against [the insured]." 322 N.Y.S.2d at 55.

The second case on which DLRH relies involved a tenant of a building who was raped and assaulted on the premises. The court found that, given the circumstances that led to the tenant's injuries, the insured reasonably believed that he was not liable for the criminal acts of a third party against the tenant. *Beach Haven Apartments,* 581 N.Y.S.2d at 690–91. Yet, in direct contrast to Henry's repeated requests that Golden be barred from the Hotel, the record in *Beach Haven Apartments* did not indicate that the tenant asked the landlord to bar her attacker from the building before she was raped and assaulted. Furthermore, the court based its finding that the landlord had a good faith belief that he was not liable for the attack on the fact that in 1979, when the attack occurred, suits by tenants against landlords for the criminal acts of a third party on the premises were "relatively rare", and the landlord had never been involved in such a suit. *Id.* 581 N.Y.S.2d at 691. Of course,

since 1979 the courts of New York have repeatedly confirmed that a tenant may recover under a claim of negligence from a landlord for the criminal acts of a third party if those acts were reasonably foreseeable and preventable, and such actions could no longer be considered rare in 1992. *See Jacqueline S. by Ludovina S.,* 598 N.Y.S.2d at 162–63, 614 N.E.2d at 725–26; *Miller v. State of New York,* 62 N.Y.2d 506, 478 N.Y.S.2d 829, 830, 467 N.E.2d 493, 494 (1984); *Nallan,* 429 N.Y.S.2d at 613, 407 N.E.2d 451. *See generally* Annotation, *Landlord's Liability for Failure to Protect Tenant from Criminal Act of Third Person,* 43 A.L.R.5th 207 (1996); *Prosser and Keeton on Torts* § 63 at 442–43 (5th ed.1984) (citing cases).

■ These two cases therefore merely confirm a proposition that I have already stated: where no facts exist to indicate that the insured might be liable for an incident on its premises, the insured has no obligation to notify its insurer of that incident. Yet as explained above, the events leading to Henry's injuries suggest that the Hotel's failure to bar Golden from the building —— after Henry requested that it do so —— might have played a central role in the December 12, 1992 incident. While it may be true that Beit had no knowledge of the Hotel's role in the event, this is so only because he failed to ask his Hotel manager about the incident.

New York courts have repeatedly rejected conclusory allegations by an insured that its decision not to notify its insurer was based on a "good faith" belief of nonliability. This is especially true in cases where the insured fails to make any investigation of the incident or loss. *See, e.g., White by White v. City of New York,* 81 N.Y.2d 955, 598 N.Y.S.2d 759, 760–61, 615 N.E.2d 216, 217–18 (1993) (without investigation there can be no conclusory allegation of good-faith belief in nonliability); *Public Service Mut. Ins. Co. v. Levy,* 87 Misc.2d 924, 387 N.Y.S.2d 962, 966 (Sup.Ct. N.Y.Co.1976) ("In order for a belief of nonliability to excuse late notice, the insured

must act reasonably, which in turn requires that its belief be implemented by whatever investigation be made under the circumstances by a prudent man"), *aff'd,* 57 A.D.2d 794, 395 N.Y.S.2d 1 (1st Dep't 1977). DLRH has presented no evidence that raises a genuine issue of fact as to whether its failure to investigate the December 12, 1992 incident and to notify Mt. Vernon could be found to be reasonable under an objective standard. Mt. Vernon may therefore disclaim liability on this basis, and is entitled to judgment as a matter of law.

### B. The Assault and Battery Exclusion

■ As the notice provision entitles Mt. Vernon to a declaratory judgment stating that it has no duty to defend or indemnify DLRH, I need not address the assault and battery exclusion to rule on the instant motions. However, the parties have fully briefed the issue, and I address it now for efficiency's sake. If my decision regarding the notice provision is reversed on appeal, the parties' renewed motions for summary judgment based on the assault and battery exclusion must be denied.

■ As stated above, the Policy expressly states that "no coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery, and Assault and Battery shall not be deemed an accident".[5] While DLRH argues that this provision of the Policy excludes only those injuries that arise out of conduct that constitutes both an assault and a battery, I disagree. This Court has recently interpreted this exact language in another insurance policy to exclude coverage for injuries arising from conduct that constitutes an assault or a battery. *See Downtown Bar & Grill, Inc. v. Sphere Drake Ins. Co.,* No. 96 Civ. 6510, 1997 WL 188139, *5 (S.D.N.Y. April 17, 1997) ("the phrase 'assault and battery' is a legal term of art which encompasses both the common law torts of assault and battery.").

---

5. For purposes of this provision, it is irrelevant that Henry's claim against DLRH is for negligence rather than for an assault or battery. In interpreting identical language in a Mt. Vernon insurance policy, the New York Court of Appeals held that the assault and battery exclusion covers any underlying claims that would not exist "but for" an assault or battery. *See Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.,* 88 N.Y.2d 347, 645 N.Y.S.2d 433, 436, 668 N.E.2d 404, 407 (1996).

Thus, the Policy will not cover DLRH if Henry's injuries were caused by an assault or a battery.[6]

The parties dispute whether Henry's injuries were the result of an assault or a battery. Plaintiff argues that "the injury to Ms. Henry clearly arose out of or was based on a criminal assault." Plaintiff's Reply Memorandum of Law ("Plaintiff's Reply") at 4. DLRH contends that Golden's actions cannot be deemed an assault or a battery because, *inter alia*, Golden lacked the necessary intent to commit either tort, and because Henry does not specifically allege that Golden came into physical contact with her.

Summary judgment on this issue is inappropriate because the parties cannot agree on one version of the events that occurred in Henry's hotel room on December 12, 1992. This is not entirely surprising as the only sources of evidence regarding this incident are Henry and Rodriguez, who do not agree on material facts regarding the incident.[7] For example, drawing on Henry's deposition testimony, DLRH argues that Golden never actually entered Henry's room. *See, e.g.,* Tr. at 16 ("Q: Did you ever see Mr. Golden on December 12, 1992? A: No."). DLRH also argues that Henry's testimony indicates that she *voluntarily went onto the window ledge,* and that her injuries resulted from her falling from that ledge. Specifically, Henry stated:

> ... I was watching TV and I heard the door knocking and then I hear, Open the door, open the door, and I tried to go to get away because I was scared of him and I tried to get to the window or—to the window, and maybe I slipped and fall [sic.] when I tried to get away.

*Id.*

Rejecting this version of events, plaintiff argues instead that the record shows Wade Golden committed a criminal assault[8] upon Henry, and that this criminal assault was the cause of her injuries. There is evidence to support plaintiff's position. For example, Henry herself initially stated that Golden kicked in the door to her room. *See* Henry's Answers to Interrogatories ¶ 8 ("Wade kicked in the door of the apartment and entered. See attached Police Report") *and* Henry's Verified Bill of Particulars ¶ 6 ("WADE GOLDEN, upon gaining access to said premises, went to [Henry's] specific apartment and proceeded in efforts to break into Room No. 305."). Also, Henry's position at the onset of the state court litigation at least appeared to be that Golden's conduct caused her to fall out her window. *See* Henry's Verified Bill of Particulars at ¶ 6 ("KETTLEY HENRY was caused to fall from the third floor window"). Finally, Rodriguez also states that Tony Gross informed her that Golden had kicked in Henry's door and entered her room. *See* Rodriguez Statement at 3.

It is unclear if Golden intended on December 12, 1992 to harm Henry or to place her in fear of harmful or offensive contact. There is circumstantial evidence to suggest that he did. For example, Henry alleges that Golden had previously slapped her during an argument, that directly before December 12, 1992, Golden had threatened to hurt her, and that she was afraid that Golden would do so when he came to her door on December 12, 1992. *See* Tr. at 12–13, 19–20. Rodriguez states that Golden and Henry used to fight at least once every week. *See* Rodriguez Statement at 3. In addition, the evidence suggesting that Golden kicked in Henry's door raises the inference that Golden was in a violent state of mind when he came to the Hotel on December 12, 1992.

---

**6.** Under New York common law, an assault is an intentional placing of another person in fear of imminent harmful or offensive contact. A battery is an intentional wrongful physical contact with another person without consent. *See Hernandez v. Lattimore,* 612 F.2d 61, 67 (2d Cir. 1979); *Merzon v. County of Suffolk,* 767 F.Supp. 432, 448 (E.D.N.Y.1991); *Coopersmith v. Gold,* 172 A.D.2d 982, 568 N.Y.S.2d 250, 252 (3d Dep't 1991).

**7.** Tony Gross, the hotel employee who was on duty on December 12, 1992, and Wade Golden do not appear to have been deposed in this case. Nor have any police reports regarding an investigation of the December 12, 1992 incident been made part of the record.

**8.** Plaintiff uses the term "criminal assault" to mean conduct that would also constitute an "assault and battery" as that term is used by the Policy and the common law.

Were I the finder of fact at this stage, I might well determine that a preponderance of the evidence suggests that, at very least, Golden assaulted Henry on December 12, 1992. However, in determining motions for summary judgment I do not try facts but rather determine whether genuine factual questions exist to be tried. Based on this record, a reasonable juror might find in favor of either party on the issues of whether Golden intended to assault or batter Henry, whether he was in Henry's room at the time she was injured, whether he made physical contact with Henry, and whether Henry fell or was caused to fall from her window. It is therefore evident that there are triable issues of material fact pertaining to the question of whether Henry's action against DLRH falls within the Policy's assault and battery exclusion, and summary judgment cannot be granted on that ground.

## IV. Conclusion

For the reasons set forth above, I find that DLRH failed to notify Mt. Vernon of Ms. Henry's accident within a reasonable time under the circumstances. Plaintiff's motion for summary judgment is therefore granted and defendant's cross-motion for summary judgment is denied.

It is accordingly ORDERED, ADJUDGED, DECREED and DECLARED that Mt. Vernon has no obligation to defend or indemnify DLRH in the pending state action *Kettley Henry v. DLRH Associates and Wade Golden;* it is furthermore

ORDERED that the Clerk of the Court close this case.