**Eric R. ADAMS, Plaintiff**

v.

**CHICAGO INSURANCE COMPANY, Patricia E. Novak, and Randolph P. Zickl, Defendants**

**No. 01–CV–6164 CJS(F).**

United States District Court, W.D. New York.

Jan. 22, 2002.

Eugene Welch, Esq., Harris and Chesworth, Rochester, NY, for Plaintiff.

Donald A.W. Smith, Esq., Law Offices of Pearl & Smith, Rochester, NY, for Defendant Chicago Ins. Co.

## DECISION and ORDER

SIRAGUSA, District Judge.

Eric R. Adams, Esq. ("Adams") is suing Chicago Insurance Company ("Chicago") claiming that Chicago has a duty to defend

and indemnify him in a lawsuit alleging professional malpractice brought against Adams by Patricia E. Novak ("Novak"). That malpractice suit is separate from this case and is pending under docket number 01–CV–6196 and assigned to the Honorable Jonathan W. Feldman, U.S. Magistrate Judge. Defendants Novak and Zickl were named in the original complaint as parties to the suit before this Court. However, Adams has made no claims against them and at oral argument, his counsel did not oppose their dismissal from the action as unnecessary parties under Rule 21 of Federal Rules of Civil Procedure. Therefore, the Court dismisses them from this action.

Both Adams and Chicago have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Adams seeks an order that Chicago is required to defend and indemnify him under the terms of his professional liability insurance contract and Chicago seeks an order dismissing the complaint, alleging that Adams failed to meet a prerequisite, thus, Chicago properly disclaimed coverage. For the reasons that follow, the Court denies Chicago's motion and grants Adams' application, holding that Chicago is estopped from declining its duty to defend and indemnify.

### Factual Background

The following facts are undisputed. On or about September 11, 1997, Chicago issued a lawyers professional liability policy, number LWB–3008198–1 ("policy"), effective for claims made during the period from December 12, 1997 to December 12, 1999. Section I of that policy, entitled "Coverage," states in pertinent part (emphasis in original),

> The Company shall have the right and duty to defend any suit against the **Insured** seeking **Damages** to which this insurance applies even if any of the alle-

gations of the suit are groundless, false or fraudulent. The Company, at its option, shall select and assign defense counsel.... The Company shall also have the right to investigate any **Claim** and/or negotiate the settlement thereof, as it deems expedient....

Paragraph B of Section IX of that policy, entitled "Conditions," contains the following pertinent provisions:

> **B. Assistance and Cooperation of Insured in the Event of Claim or Suit:**
>
> Upon the **Insured** becoming aware of any negligent act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** which could reasonably be expected to be the basis of a **Claim** covered hereby, written notice shall be given by the **Insured**, or its representative to the Company together with the fullest information obtainable. If **Claim** is made or suit is brought against the Insured, the **Insured** or its representative shall immediately forward to the Company every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative.

Professional Liability Ins. Policy No. LWB–3008198–1 at 6 (attached as Exhibit A to Copoloff aff.) (emphasis in original). This provision creates two notification duties on the insured. One is to notify Chicago of a potential claim, and the second is to notify Chicago of an actual claim and forward the papers "immediately." The contract does not explicitly state a time requirement regarding the potential claim notification.

The policy has a definitions section and the word "Claim" is defined as:

> "Claim" means a demand for money or services, or the filing of suit or in-

stitution of arbitration proceedings or alternative dispute resolution naming an **Insured** and alleging a negligent act, error, omission or **Personal Injury** resulting from the rendering of or failure to render **Professional Services.** **Claim** does not include proceedings seeking injunctive or other non-pecuniary relief.

Professional Liability Ins. Policy No. LWB–3008198–1 at 4 (attached as Exhibit A to Copoloff aff.) (emphasis in original).

On September 24, 1993, Patricia Novak ("Novak") was injured in a motor vehicle collision in Rochester, New York. The collision was allegedly caused by the negligence of Carolyn Calcagno ("Calcagno"). On or about March 10, 1994, Novak retained Adams to represent her with regard to a workers compensation claim related to the collision. Adams made a notation on his file of the statute of limitations time for a third-party personal injury claim on behalf of Novak against Calcagno. Adams corresponded with Calcagno and her insurance carrier on Novak's behalf, and advised Calcagno that he represented Novak in connection with a claim for damages resulting from the motor vehicle collision. All these representations and acts by Adams regarding the personal injury claim were done prior to Novak having retained the services of another attorney to represent her on the personal injury claim.

Subsequently, Adams referred Novak to Randolph P. Zickl, Esq. ("Zickl") to pursue the personal injury claim. Adams represented to both Novak and Zickl that he would participate in any meetings between them and in any court proceedings if necessary. He further indicated to Novak that he would continue to exercise a personal role in the case and informed her that he would, "remain actively involved in all aspects of your suit." Eric A. Adams letter to Patricia Novak (Jan. 22, 1998) at 1

(attached as Exhibit H to Coploff aff.). Adams also had a fee sharing agreement with Zickl in the event of any award. Adams dep. at 19 (attached as Exhibit D to Coploff aff.). Novak testified in September 2000 that she wanted Adams involved, because she had trusted him. Novak dep. at 97 (attached as Exhibit I to Coploff aff.). Adams was the one who spoke with Novak's medical doctors, and Zickl believed he did not meet with Novak without Adams being present. Zickl dep. at 87–89 (attached as Exhibit J to Coploff aff.). After Novak signed the retainer agreement with Zickl, both Adams and Zickl assured Novak that her personal injury claim was moving along. Novak dep. at 102 (attached as Exhibit I to Coploff aff.)

Adams continued to represent Novak on the workers compensation claim and, in June 1996, informed the State Insurance Fund that "we" are pursuing a third-party claim and that Zickl anticipated filing a complaint in mid-July. Eric R. Adams letter to James Fehrer, Esq., the State Insurance Fund (Jun. 27, 1996) at 1 (attached as Exhibit K to Coploff aff.). However, no suit was commenced prior to the expiration of the limitations period on September 24, 1996.

At some time between October 30, 1996 and November 6, 1996, Adams learned that Zickl had missed the statute of limitations deadline. Novak had left an urgent telephone message for Adams on October 30, 1996, and Adams returned the call on November 5, 1996, but received no answer from her. Adams and Novak spoke by telephone on November 6, 1996. At his deposition, held on August 22, 2000, Adams was asked, "[i]n regards to your 11/5 [1996] notes, you make reference that you will get the name of Mr. Zickl's malpractice carrier. Did you believe that you had any exposure at that point?" He responded, "[w]ell, I didn't think so. The

reality of today's society is that I knew that if Randy [Zickl] got sued, I would get sued." Adams dep. at 51 (attached as Exhibit D to Coploff aff.).

Zickl filed an action against Calcagno for Novak on December 4, 1996. Both Adams and Zickl knew that the statute of limitations period had run. However, both were hopeful that a tolling provision might apply. In that regard, Zickl asked Adams to research any medical evidence available that could show Novak had a serious medical condition which may have affected her between the time of the collision and the filing of the action, thus tolling the statute of limitations. Adams agreed, and participated in the effort to find such evidence, but to no avail. Therefore, Zickl did not raise a tolling argument in opposition to Calcagno's statute of limitations defense. In 1997 and 1998, Zickl, with the knowledge and acquiescence of Adams, attempted to convince Novak to voluntarily discontinue her lawsuit against Calcagno. The action was eventually dismissed by the court as barred by the statute of limitations.

On July 20, 1999, Adams reported this matter to Chicago for the first time. Chicago responded in a letter dated July 28, 1999, reserving its right to disclaim coverage. Chicago contends that as of July 28, 1999, they were under the impression that Adams had first learned of the potential claim in March or April 1997 and subsequently came to believe that he knew about it as early as January or February of 1997. Adams disputes this and states that he never learned of a potential claim until July 1999. Adams claims that Chicago's attorney told him to continue representing Novak on the workers compensation claim; Chicago disputes his assertion.

On August 12, 1999, Adams wrote to Novak concerning a potential conflict of interest. In his letter, Adams stated, "[i]f Mr. Zickl is found to have committed 'malpractice,' I could also be held responsible if I acted negligently in referring you to him for representation." Eric A. Adams letter to Patricia Novak (Aug. 12, 1999) at 1 (attached as Exhibit O to Coploff aff.). Novak commenced a legal malpractice action against Adams and Zickl on March 1, 2000. The summons and complaint were served on Adams on March 9, 2000. Adams forwarded copies of the summons and complaint to Chicago the same day.

On March 17, 2000, eight months after Adams had initially notified them of the potential claim, Chicago denied coverage. Chicago stated that Adams had a duty to report the potential claim in early 1997 when he learned that the statute of limitations period had been missed, but did not do so until July 1999. On March 16, 2001, Adams commenced a declaratory judgement action in New York State Supreme Court, Genesee County. Chicago removed the case to this Court on April 2, 2001. Jurisdiction in this Court is alleged in the original Complaint to be based on diversity.[1] Chicago filed its motion for summary judgment on June 26, 2001, and Adams filed his on June 29, 2001. Both parties have responded and replied to each other's motions and the Court heard oral argument on September 26, 2001.

### Summary Judgement Standard

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

1. With Novak and Zickl as named parties, there was no complete diversity. Both par-

ties have been dismissed from the case.

any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley*, 274 F.3d 677, 680–81 (2d Cir.2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187 (5th Cir.1991); FED. R. CIV. P. 56(f). Mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986). The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *See Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996). It is equally well settled that in diversity actions, such as the one at bar, federal court sits and operates as if it were " 'only another court of the state,' " and must apply state substantiative law. *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 241 (2d Cir.2001) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)).

**Analysis**

*Timeliness of notice*

Chicago contends that Adams failed to provide it with timely notice of a potential claim as required under the terms of the policy at issue. Adams points out that in section 9B of the policy, no specific time period is set forth as to when the insured is to give notice of a potential claim. Adams argues that he has always maintained that he first received notice of a potential claim on July 7, 1999. It was that day when Novak's new attorney, Lee Michaels ("Michaels"), told Adams for the first time he was considering an action against Adams for malpractice.

On the issue of notice to the insurer, Chicago contends that under New York law, where the policy is silent as to when notice must be given, "the law implies a duty to give notice within a reasonable time." *Thomson v. Power Auth. of State of N.Y.*, 217 A.D.2d 495, 497, 629 N.Y.S.2d 760 (N.Y.A.D. 1st Dept.1995). The Court agrees with Chicago on this point, and, thus, the question becomes what was a reasonable time? Adams first learned that Zickl had missed the statute of limitations on or about November 6, 1996. His first notice to Chicago did not occur until July 20, 1999. Adams's argument is summed up in his memorandum of law and reply to Chicago's opposition, wherein he states:

[l]earning that Mr. Zickl missed the statute of limitations was not notice of a potential claim. It is clear from all of the affidavits submitted to date, as well as the accompanying reply affidavit of Lee S. Michaels, that Mr. Adams had a reasonable good faith belief in non-liability. Learning that Mr. Zickl missed the statute of limitations did not cause him, or any reasonable person, to believe that he was exposed to a potential claim because at first he was told, by Mr. Zickl, that the statute could be extended because of Ms. Novak's mental incompetence. More importantly, Mr. Adams was inexperienced in malpractice actions and believed that only Mr. Zickl was liable for any malpractice because Mr. Zickl was responsible for the third party action.

Plaintiff Adams' Memorandum of Law and Reply to Chicago's opposition (August 10, 2001) at 2.

Chicago argues that, "[n]ot only would a reasonable attorney have envisioned his own liability under the circumstances, Adams later candidly acknowledged to Novak that, if Zickl were found to have committed malpractice, he (Adams) could also be held responsible to her." Chicago's Memorandum of Law (June 26, 2001) at 6 (quoting Coploff aff. at ¶ 12 and Exhibit O).

■ New York case law holds that, "[g]enerally the timeliness of notice presents a question of fact." *Home Mut. Ins. v. Presutti,* 78 A.D.2d 968, 969, 433 N.Y.S.2d 896 (4th Dept.1980) (citations omitted). It is also well settled that " '[f]ailure to give timely notice to the insurer may be excused when premised upon the insured's good faith belief of nonliability (citations omitted).' " *LoTempio v. Safeco Ins. Co. of America,* 71 A.D.2d 799, 800–01, 419 N.Y.S.2d 347 (N.Y.A.D. 4th Dept.1979) quoting *Hartford Fire Ins. Co.*

*v. Masternak,* 55 A.D.2d 472, 474, 390 N.Y.S.2d 949 (N.Y.A.D. 4th Dept.1977); *see also Sparacino v. Pawtucket Mut. Ins. Co.,* 50 F.3d 141, 143 (2d Cir.1995). However, the New York Courts have also held that, "[t]he sufficiency of an excuse is for the jury to decide unless it is patently without merit, in which case the Court will permit disclaimer as a matter of law." *Public Service Mut. Ins. Co. v. Levy,* 87 Misc.2d 924, 928, 387 N.Y.S.2d 962 (N.Y.Sup.Ct.1976). "Generally, the question of whether a delay is excusable is a question of fact for the jury, but of course a delay may be unreasonable as a matter of law when either no excuse is advanced or a proffered excuse is meritless." *Olin Corp. v. Ins. Co. of North America,* 966 F.2d 718, 724 (2d Cir.1992) (citations omitted).

■ In the case at bar, Adams states, "[a]t no time until July 7, 1999, when I was first contacted by Ms. Novak's new lawyer, Lee Michaels, was I aware that Ms. Novak and her new lawyer were considering filing a claim against me." Adams aff. at 10. He also contends that up until July 7, 1999, he believed Zickl's representations that the statute of limitations could be tolled, and believed that Zickl was the only one potentially liable. *Id.* at ¶¶ 11 & 12.

The Court can not accept that Adams, knowing he was closely engaged in work on a client's case with co-counsel, could reasonably believe that co-counsel's failure to file suit before the expiration of the statute of limitations would not potentially expose him to a malpractice claim. Initially, immediately after realizing the limitations period had expired, Adams might have reasonably believed a tolling provision would insulate him from any liability. However, once he saw that there was no means for tolling the statute of limitations and, in concert with Zickl, began to urge Novak to withdraw her lawsuit, Adams

was clearly on notice of a potential claim, notwithstanding the good relations between his client and him. Certainly by August 7, 1997, Adams could see that Zickl had no defense to a motion to dismiss the personal injury suit, and since he and Zickl were essentially operating as co-counsel, Adams must have reasonably believed himself to be at least potentially liable. By August 25, 1998, when he received a copy of Zickl's letter to Novak asking her to withdraw her lawsuit, even a non-lawyer would have seen the reasonable potential for liability. Yet, it was not until July 20, 1999, that Adams first notified Chicago of the potential for a claim against him by Novak.

Though, as previously indicated, the case law generally holds that the question of reasonableness is one for the fact finder, in this case the Court finds, as a matter of law, that under the undisputed factual circumstances present here, Adams failed to notify Chicago after becoming aware of a "negligent act, error, or omission in the rendering of or failure to render professional services" which could reasonably be expected to be the basis of a claim covered by the insurance. The Court specifically finds that Adams' proffered excuse is meritless under the circumstances.

### Equitable Estoppel Against Chicago

Not only does Adams argue that he timely notified Chicago of the potential for a claim against him, he also asserts that Chicago is equitably estopped from disclaiming coverage in this case. He maintains that between his notification on July 20, 1999, and Chicago's actual disclaimer on March 17, 2000, eight months elapsed, during which time Chicago failed to take action, and that this conduct on Chicago's part was to his detriment. Adams argues that during the eight month period he relied on Chicago's apparent defense of him against the malpractice claim, and that

Chicago's conduct during that period caused prejudice to Adams's case. Therefore, Adams asks this Court to rule, as a matter of law, that Chicago's disclaimer is unreasonably late and ineffective.

It is well settled that under the New York common law doctrine of equitable estoppel an insurer cannot unreasonably delay the exercise of its right to disclaim to the detriment of an inured. *See United States Fidelity and Guaranty Co. v. Weiri,* 265 A.D.2d 321, 696 N.Y.S.2d 200 (N.Y.A.D. 2nd Dept.1999) *citing Matter of Firemen's Fund Ins. Co. v. Hopkins,* 88 N.Y.2d 836, 644 N.Y.S.2d 481, 666 N.E.2d 1354; *Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 389 N.E.2d 1061. Both Adams and Chicago cite a district court case holding that an insurer may be estopped from asserting a valid defense under the policy if: (1) the insurer undertakes to defend the insured, (2) with knowledge of a defense to coverage under the policy, and (3) unreasonably delays disclaiming coverage on the basis of that defense, and (4) if the insurer's delay prejudices the insured who (5) reasonably relied on the insurer. *Mount Vernon Fire Ins. Co. v. J.J.C. Stucco & Carpentry Corp.,* 1997 WL 177864, 1997 U.S. Dist. LEXIS 21690 (E.D.N.Y. Apr. 3, 1997).

It was on July 7, 1999, that Adams learned for the first time, in a conversation with Novak, that she was discussing with attorney Michaels filing a malpractice action against both Zickl and Adams. Later that same day, Adams and Michaels spoke by telephone, and Michaels informed Adams that, at first, he had not considered bringing a malpractice action against Adams, but then changed his mind after learning that Zickl did not have malpractice insurance coverage.

On July 20, 1999, Adams sent written notification to Chicago of the potential

claim against him. On July 26, 1999, Chicago's claims attorney, Shareen Sennello ("Sennello"), interviewed Adams by telephone. On July 28, 1999, Sennello sent Adams a detailed letter acknowledging receipt of his written notification of claim, outlining their discussions on the telephone, and reserving Chicago's right to disclaim coverage at a later date if it was determined that Adams failed to comply with notification requirements. Shareen A. Sennello letter to Eric R. Adams (July 28, 1999) at 3 (attached as Exhibit V to Coploff aff.).

Adams claims that during the ensuing eight months, Chicago received correspondence from Michaels on numerous occasions. For example, Michaels wrote to Sennello on October 5, 1999, and laid out the facts of his malpractice action and enclosed documentation. He wrote to her again on December 28, 1999, requesting information from her files. Michaels' next letter of January 6, 2000, referred to a telephone conversation concerning his and Sennello's substantial disagreement on two legal subjects. Apparently, Sennello informed Michaels that Novak's claim against Adams was limited to $100,000, the underlying policy limit. Michaels asked Sennello for case law supporting her position. On January 20, 2000, Michaels wrote a short letter referring to his January 6, 2000, correspondence, indicating that he was waiting for Sennello's response. He also stated, "I have drafted a complaint and am prepared to begin litigating forthwith if you do not respond." On February 8, 2000, Michaels wrote to Sennello again, referring to his letters of January 6, 2000, and January 20, 2000. He wrote once more that she had not responded to his earlier letter. He also wrote, "[c]learly this matter is headed for suit, but I thought I would take a stab at least at a possible accommodation with you." Finally, his letter of February 23, 2000, con-

tained the following two sentences: "Regrettably, you have chosen not to answer any of my recent attempts at communication. You leave me with no choice but to serve Mr. Adams with process." Apparently, the only correspondence generated by Sennello to Michaels dates back to her letter of October 1, 1999, asking him for information about the theory of his malpractice action (Copies of all of these letters are attached as Exhibit A to the affidavit of Lee S. Michaels, Esq. filed on June 29, 2001, in this case.)

In response to Adams's equitable estoppel argument, Chicago claims that it denied coverage eight days after Adams was sued without ever undertaking his defense. Memorandum of Law of Defendant Chicago Insurance Company in Opposition to Plaintiff's Motion for Summary Judgment (July 30, 2001) ("Chicago's Memorandum of Law") at 5. In this regard, Chicago makes the disingenuous argument that it, "had nothing concrete to disclaim until suit was actually brought against Adams." Chicago's Memorandum of Law at 5. Yet, on the issue of late notice, previously discussed, Chicago maintained that Adams' position that he had nothing concrete about which to notify Chicago until July 1999 was meritless.

On the matter of disclaimer, the Court finds that the definition of "claim" is broad enough to include the apparent negotiations between Chicago's attorney, Sennello, and Novak's attorney, Michaels, regarding settlement of Novak's potential malpractice action. The Court further concludes that Chicago learned on July 20, 1999, sufficient information to warrant disclaimer under the policy's IX B condition, but chose to delay disclaiming coverage until March 17, 2000. Moreover, the Court finds that Chicago engaged in conduct which gave Novak's attorney, Mi-

chaels, the appearance Chicago was defending Adams.

Therefore, under the facts present here, the Court concludes as a matter of law, that, based upon the principles of equitable estoppel, Chicago's late disclaimer of coverage was ineffective.

## CONCLUSION

Defendants Novak and Zickl, named in the original complaint as parties to this action, are dismissed from this action as unnecessary parties under Rule 21 of the Federal Rules of Civil Procedure. Chicago's motion for summary judgment (document # 11) is denied in its entirety and Adams's motion for summary judgment (document # 14) is granted to the extent that Chicago must defend and indemnify Adams, pursuant to the policy at issue here, in the *Novak v. Zickl and Adams* law suit and reimburse him for his attorney fees and costs and disbursements as required by the policy.

IT IS SO ORDERED.